[No. B204334. Second Dist., Div. Three. Apr. 17, 2009.]

APARTMENT ASSOCIATION OF LOS ANGELES COUNTY, INC.,
Plaintiff and Appellant, v.
CITY OF LOS ANGELES, Defendant and Respondent.

16

### COUNSEL

California Apartment Law Information Foundation, Trevor A. Grimm and Craig Mordoh for Plaintiff and Appellant.

Rockard J. Delgadillo, City Attorney, Claudia McGee Henry, Assistant City Attorney, and Gerald M. Sato, Deputy City Attorney, for Defendant and Respondent.

Clare Pastore for Bet Tzedek Legal Services, Coalition for Economic Survival, Inner City Law Center, Legal Aid Foundation of Los Angeles, Public Counsel, Western Center on Law and Poverty and Tenderloin Housing Clinic as Amici Curiae on behalf of Defendant and Respondent.

### OPINION

### KITCHING, J.—

## INTRODUCTION

Plaintiff and appellant Apartment Association of Los Angeles County, Inc., challenges the lawfulness of an ordinance enacted by defendant and respondent City of Los Angeles (City). The ordinance provides that if a landlord demolishes residential property subject to City's rent control law, and builds new residential rental units on the same property within five years, the newly constructed units are also subject to the rent control law. The trial court sustained City's demurrer to plaintiff's complaint for declaratory relief without leave to amend and entered judgment in favor of City. Plaintiff appeals from the judgment.

This case requires us to interpret two statutory schemes. The first is the Ellis Act, Government Code section 7060 et seq.[1] The Ellis Act permits owners of property subject to rent control to evict their tenants and go out of business if they comply with certain procedural requirements. It also includes recontrol provisions designed to thwart efforts by landlords to circumvent rent control by evicting tenants under the false pretense that they intend to go out of the rental business, and then re-leasing their property at market rental rates. One such provision, section 7060.2, subdivision (d), specifically authorizes City to enact the ordinance at issue in this case.

The second statutory scheme is the Costa-Hawkins Rental Housing Act, Civil Code section 1954.50 et seq. (Costa-Hawkins), which was enacted after the Ellis Act. A provision of Costa-Hawkins, Civil Code section 1954.52, subdivision (a), generally exempts newly constructed residential units from rent control. Specifically, it provides: "(a) *Notwithstanding any other provision of law*, an owner of residential real property may establish the initial and all subsequent rental rates for a dwelling or a unit about which any of the following is true: [¶] (1) It has a certificate of occupancy issued after February 1, 1995." (Italics added.)

Plaintiff argues that Civil Code section 1954.52, subdivision (a)(1) preempts City's ordinance because the ordinance was enacted pursuant to section 7060.2, subdivision (d), which plaintiff contends was impliedly repealed by Costa-Hawkins. Absent an express declaration of legislative intent, however, we presume that a statute was not impliedly repealed by a subsequent statute unless there is no rational way to harmonize the two potentially conflicting statutes. As we will explain, plaintiff cannot meet its burden of overcoming the presumption against the implied repeal of section 7060.2, subdivision (d).

Section 7060.2, subdivision (d) and Civil Code section 1954.52, subdivision (a)(1) can and should be harmonized in a manner that does not preempt City's ordinance. This can be done by interpreting section 7060.2, subdivision (d) as an exception to Civil Code section 1954.52, subdivision (a)(1).

Costa-Hawkins specifically provides that it does not "affect the authority of a public entity that may otherwise exist to regulate or monitor the basis for eviction." (Civ. Code, § 1954.52, subd. (c).) Section 7060.2, subdivision (d) is, in essence, a statute that allows local entities to enact ordinances that discourage landlords from evicting tenants under the false pretense that they are going out of business pursuant to the Ellis Act. Thus, by its terms,

---

[1] Except as otherwise indicated, all subsequent section references are to the Government Code.

Costa-Hawkins does not override section 7060.2, subdivision (d), or "affect" City's authority to enact the ordinance at issue here.

Our interpretation of the statutes in question is consistent with the principle of reconciling statutes by giving a more specific provision precedence over a more general provision. Civil Code section 1954.52, subdivision (a)(1) generally governs all newly constructed rental units that were issued a certificate of occupancy after February 1, 1995. Section 7060.2, subdivision (d) governs a relatively small subset of such rental units, namely accommodations that replace rental units withdrawn under the Ellis Act.

The legislative history of the Ellis Act and Costa-Hawkins also supports our holding. Section 7060.2, subdivision (d) was amended *after* the enactment of Costa-Hawkins. If section 7060.2, subdivision (d) had been repealed by Costa-Hawkins, as plaintiff contends, the Legislature would not have engaged in the idle act of amending a repealed statute. Further, Costa-Hawkins *expressly* repealed a host of statutes but did not do the same with respect to section 7060.2, subdivision (d). This indicates that the Legislature did not intend to repeal the latter.

■ For all of these reasons, we conclude that the City ordinance promulgated pursuant to section 7060.2, subdivision (d) was not barred or preempted by Costa-Hawkins. We thus affirm the judgment in favor of City.

## BACKGROUND

### 1. *Plaintiff*

Plaintiff is a trade association representing owners of rental housing.[2] The majority of plaintiff's members own property subject to the Rent Stabilization Ordinance of the City of Los Angeles (RSO), Los Angeles Municipal Code section 151.00 et seq. The RSO places limitations on the amount of rent landlords may charge for certain residential rental units. (See L.A. Mun. Code, §§ 151.04, 151.06, 151.07.)

### 2. *The Ordinance*

As we explain, section 7060.2, subdivision (d), a provision of the Ellis Act, authorizes local governmental entities to enact certain ordinances. Although the Ellis Act was enacted in 1985, City did not promulgate an ordinance

---

[2] In reviewing the sufficiency of a complaint against a general demurrer, we assume that the facts alleged in the plaintiff's complaint are true. (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43 [96 Cal.Rptr.2d 354].)

pursuant to section 7060.2, subdivision (d) for approximately 22 years. On June 5, 2007, however, City adopted ordinance No. 178848 (Ordinance), which was codified as Los Angeles Municipal Code section 151.28. Subsection A of this section provides, in pertinent part: "If a building containing a rental unit that was the subject of a Notice of Intent to Withdraw pursuant to the provisions of Subsection A. of Section 151.23[3] is demolished and rental units are constructed on the same property and offered for rent or lease within five years of the date the rental unit that was the subject of the Notice of Intent to Withdraw was withdrawn from rent or lease, the owner may establish the initial rental rate for the newly constructed rental units. The provisions of the Rent Stabilization Ordinance, Section 151.00, et seq., and other provisions of this chapter shall apply to the newly constructed rental units."[4]

### 3. *Plaintiff's Complaint*

On June 22, 2007, plaintiff filed a complaint for declaratory relief against City. Plaintiff alleged that the Ordinance is preempted by a provision of Costa-Hawkins, Civil Code section 1954.52, subdivision (a)(1).[5] Plaintiff prayed for a declaration that the Ordinance is invalid "to the extent that it attempts to extend coverage of the RSO to rental housing constructed after February 1, 1995."

### 4. *City's Demurrer*

City demurred to the complaint on the ground that it failed to state facts sufficient to constitute a cause of action. City argued that the Ordinance was not preempted by Costa-Hawkins, and that the Ordinance was specifically

---

[3] Los Angeles Municipal Code section 151.23 provides: "Notwithstanding any provision of this chapter to the contrary, if a landlord desires to demolish rental units subject to the Rent Stabilization Ordinance, or otherwise withdraw the units from rental housing use, then the following provisions shall apply: [¶] **A. Notice of Intent to Withdraw.** The landlord shall notify the [Los Angeles Housing] Department of an intention to withdraw a rental unit from rental housing use. This Notice of Intent to Withdraw shall contain . . . statements, under penalty of perjury . . . stating that the landlord intends to evict in order to demolish the rental unit or to remove the rental unit from rental housing use . . . . [¶] . . . [¶] **B.** [¶] . . . [¶] The date on which the rental units are to be withdrawn from rental housing use shall be at least 120 days from the date of the delivery to the Department in person or by first-class mail of the Notice of Intent to Withdraw." City was authorized to enact this provision under section 7060.4, subdivision (b), a provision of the Ellis Act.

[4] The Ordinance provides for exemptions from this provision for (1) financial hardship, (2) buildings that replace the demolished units with affordable units, and (3) owner-occupied buildings with four or fewer units. (L.A. Mun. Code, § 151.28, subd. C.)

[5] Plaintiff has standing to challenge the Ordinance. (See *Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles* (2006) 136 Cal.App.4th 119, 128, 129 [38 Cal.Rptr.3d 575] (*Apartment Assn.*).)

authorized under section 7060.2, subdivision (d). The trial court sustained the demurrer without leave to amend, and entered judgment in favor of City. Plaintiff filed a timely notice of appeal.

## DISCUSSION

### 1. *Standard of Review*

"The issue of preemption of a municipal ordinance by state law presents a question of law, subject to de novo review." (*Apartment Assn., supra,* 136 Cal.App.4th at p. 129.) The interpretation of state statutes also entails a resolution of a pure question of law, which is examined de novo. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956].)

### 2. *Principles of Statutory Interpretation*

■ This case requires us to interpret provisions of the Ellis Act and Costa-Hawkins, as well as the interrelationship between the two statutory schemes. "The fundamental task of statutory construction is to 'ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.] In order to determine this intent, we begin by examining the language of the statute.' [Citation.] The words of a statute are to be interpreted in the sense in which they would have been understood at the time of the enactment." (*People v. Cruz* (1996) 13 Cal.4th 764, 774–775 [55 Cal.Rptr.2d 117, 919 P.2d 731].)

■ " 'The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute. . . . An interpretation that renders related provisions nugatory must be avoided [citation] . . . .' " (*People v. Shabazz* (2006) 38 Cal.4th 55, 67–68 [40 Cal.Rptr.3d 750, 130 P.3d 519].)

■ Where, as here, the plain meaning of a statute is insufficient to resolve a question of interpretation, we may review the legislative history of the statute and the wider historical circumstances of its enactment, as well as the public policy underlying the law. (*Absher v. AutoZone, Inc.* (2008) 164 Cal.App.4th 332, 340 [78 Cal.Rptr.3d 817].) "If two seemingly inconsistent statutes conflict, the court's role is to harmonize the law. [Citations.] We presume that the Legislature, when enacting a statute, was aware of existing related laws and intended to maintain a consistent body of rules." (*Stone Street Capital, LLC v. California State Lottery Com.* (2008) 165 Cal.App.4th 109,

118 [80 Cal.Rptr.3d 326] (*Stone Street*); see also *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323] ["statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible"]; *Drouet v. Superior Court* (2003) 31 Cal.4th 583, 593 [3 Cal.Rptr.3d 205, 73 P.3d 1185] (*Drouet*) [when two statutes regarding the same subject matter appear in conflict, the court's task is to harmonize the statutes].)

■ "One 'elementary rule' of statutory construction is that statutes in pari materia—that is, statutes relating to the same subject matter—should be construed together. [Citation.] . . . The rule of in pari materia is a corollary of the principle that the goal of statutory interpretation is to determine legislative intent." (*Droeger v. Friedman, Sloan & Ross* (1991) 54 Cal.3d 26, 50–51 [283 Cal.Rptr. 584, 812 P.2d 931].)

■ "If inconsistent statutes cannot otherwise be reconciled, 'a particular or specific provision will take precedence over a conflicting general provision.' [Citations.] The Supreme Court has confirmed, ' "where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment. [Citations.]" ' (*People v. Gilbert* (1969) 1 Cal.3d 475, 479 [82 Cal.Rptr. 724, 462 P.2d 580].)" (*Stone Street, supra,* 165 Cal.App.4th at p. 119.)

■ Generally, we will presume that the enactment of a statute does *not* impliedly repeal existing statutes. (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 476 [66 Cal.Rptr.2d 319, 940 P.2d 906] (*Garcia*).) "Absent an express declaration of legislative intent, we will find an implied repeal 'only when there is no rational basis for harmonizing the two potentially conflicting statutes [citation], and the statutes are "irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation." ' " (*Id.* at p. 477.)

3. *The Ellis Act Was Enacted to Allow Landlords of Property Subject to Rent Control to Evict Tenants and Go out of the Residential Rental Business*

■ In *Nash v. City of Santa Monica* (1984) 37 Cal.3d 97, 99, 109 [207 Cal.Rptr. 285, 688 P.2d 894] (*Nash*), the California Supreme Court upheld a city ordinance that restricted "the circumstances in which owners of residential properties could *evict tenants* in order to withdraw from the rental market." (*Pieri v. City and County of San Francisco* (2006) 137 Cal.App.4th 886, 888 [40 Cal.Rptr.3d 629], italics added.) The Ellis Act, enacted in 1985 (Stats. 1985, ch. 1509, § 1, p. 5560), was a direct response to *Nash*.

(§ 7060.7.) The purpose of the Ellis Act "is to allow landlords who comply with its terms to go out of the residential rental business *by evicting their tenants* and withdrawing all units from the market . . . ." (*City of Santa Monica v. Yarmark* (1988) 203 Cal.App.3d 153, 165 [249 Cal.Rptr. 732], italics added [holding that city ordinance prohibiting eviction of tenants of rent control unit absent permit was preempted by Ellis Act].) The heart of the Ellis Act is section 7060, subdivision (a), which states that no public entity shall by statute, ordinance, regulation, or administrative action "compel the owner of any residential real property to offer, or to continue to offer, accommodations in the property for rent or lease," except under circumstances not relevant to this case.

 4. *Section 7060.2, Subdivision (d) Is Intended to Prevent Landlords from Evicting Tenants Under False Pretenses*

 ■ A provision of the Ellis Act, section 7060.2, subdivision (d), authorizes cities to enact ordinances that impose rent control on newly constructed buildings that replace residential rental units previously subject to rent control. Specifically, cities may enact ordinances that provide: "If the accommodations are demolished, and new accommodations are constructed on the same property, and offered for rent or lease within five years of the date the accommodations were withdrawn from rent or lease, the newly constructed accommodations shall be subject to any system of controls on the price at which they would be offered on the basis of a fair and reasonable return on the newly constructed accommodations, notwithstanding any exemption from the system of controls for newly constructed accommodations." (§ 7060.2, subd. (d).) The ordinance at issue in this case was promulgated pursuant to section 7060.2, subdivision (d).

 Section 7060.2, subdivision (d) was not originally part of Senate Bill No. 505 (1985–1986 Reg. Sess.) (Senate Bill 505), which enacted the Ellis Act. Opponents of Senate Bill 505 argued that the bill would undermine local rent control ordinances and various state laws protecting tenants. They claimed that the bill "could permit property owners to take a unit off the market and *evict the tenant under the pretext of going out of business*, and then relet the property as a new rental 6 months later." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 505 (1985–1986 Reg. Sess.) as amended Apr. 18, 1985, p. 4, italics added.)

 Senate Bill 505 was amended to include "recontrol" provisions to address this concern.[6] With respect to rental property subject to rent control that is

---

 [6] (See Sen. Com. on Judiciary, Analysis of Sen. Bill No. 505 (1985–1986 Reg. Sess.) as amended May 15, 1985, pp. 5, 7 [bill amended to include recontrol provisions to provide safeguards against bad faith evictions]; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d

withdrawn from the market *and demolished*, Senate Bill 505 was amended to include the language currently codified as section 7060.2, subdivision (d).[7] As to rental units subject to rent control withdrawn from the market but *not* demolished, Senate Bill 505 was amended to include a provision codified as section 7060.2, subdivision (a).[8] Under this provision, "if the units withdrawn from the market are subsequently offered again for rent, local governments may require landlords to offer the units at the lawful rent in effect at the time the notice of intent to withdraw was filed." (*Drouet, supra*, 31 Cal.4th at p. 590.)

> 5. *Costa-Hawkins Generally Prohibits the Application of Rent Control to Newly Constructed Residential Units, but Does Not Affect the Authority of Local Public Entities to Regulate or Monitor the Basis for Eviction*

■ In 1995, California enacted Costa-Hawkins. (Stats. 1995, ch. 331, § 1, p. 1820.) As we have explained, a provision of Costa-Hawkins, Civil Code section 1954.52, subdivision (a)(1), effectively exempts newly constructed rental units from local rent control. Civil Code section 1954.52, subdivision (c) provides that this statute shall not "be construed to affect the authority of a public entity that may otherwise exist to regulate or monitor the basis for eviction."

■ Another provision of Costa-Hawkins, Civil Code section 1954.53, established "vacancy decontrol for residential dwelling units where the former tenant has voluntarily vacated, abandoned or been legally evicted." (*Cobb v. San Francisco Residential Rent Stabilization & Arbitration Bd.* (2002) 98 Cal.App.4th 345, 351 [119 Cal.Rptr.2d 741]; see also *Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1237 [63 Cal.Rptr.3d 398, 163 P.3d 89] (*Action Apartment Assn.*).) The effect of this vacancy decontrol provision was "to permit landlords 'to impose whatever rent they choose at the commencement of a tenancy.' [Citation.] The Legislature was well aware, however, that such vacancy decontrol gave landlords an incentive to evict tenants that were paying rents below market rates. [Citation.] Accordingly, the statute expressly preserves the authority of

reading analysis of Sen. Bill No. 505 (1985–1986 Reg. Sess.) as amended May 30, 1985, p. 2 ["In response to concerns that the bill could permit property owners to evade rent control and other laws by ceasing to rent under the guise of going out of business, the bill has been amended to provide some safeguards against abuse."]; Sen. Ellis, letter to Governor Deukmejian re Sen. Bill No. 505 (1985–1986 Reg. Sess.) Sept. 13, 1985 [bill responds to landlord "temporarily" going out of business].)

[7] This provision was originally codified as section 7060.2, subdivision (c) (Stats. 1985, ch. 1509, § 1, p. 5560) and, as explained below, amended in 2002.

[8] This provision was amended and reorganized in 2002. (Stats. 2002, ch. 301, § 5.)

local governments 'to regulate or monitor the grounds for eviction.' (Civ. Code, § 1954.53, subd. (e).)" (*Action Apartment Assn.*, at pp. 1237–1238.)[9]

### 6. Costa-Hawkins Does Not Preempt the Ordinance, and Does Not Expressly or Impliedly Repeal Section 7060.2, Subdivision (d)

### A. Section 7060.2, Subdivision (d) Is an Exception to Civil Code Section 1954.52, Subdivision (a)(1)

We now turn to applying the general principles of statutory interpretation to the interrelationship between the Ellis Act and Costa-Hawkins. For reasons explained herein, we hold that section 7060.2, subdivision (d) and Civil Code section 1954.52, subdivision (a)(1) can and should be harmonized by construing the former as an exception to the latter.[10]

As a general rule, if residential real property[11] has a certificate of occupancy issued after February 1, 1995, it is not subject to any system of controls on the price at which rental units are offered (rent control). (Civ. Code, § 1954.52, subd. (a)(1).) However, a public entity may provide by statute, ordinance or regulation as specified in section 7060.5, that such residential real property is subject to rent control if the following conditions are satisfied:

1. The residential real property consists of accommodations[12] constructed on the same property where previous accommodations were demolished;

2. The previous accommodations were subject to rent control before being withdrawn from rent or lease; and

---

[9] The legislative history of Costa-Hawkins indicates that the Legislature did not intend for Costa-Hawkins to affect the rights of tenants who were already living in residential units subject to rent control. (See Reynolds & Conner, Enrolled Bill Rep. on Assem. Bill No. 1164 (1995–1996 Reg. Sess.) July 27, 1995, p. 5 ["The intent of the sponsor is to permit the operation of rent controls that affect an existing tenant but to limit the ability of localities to control rent setting when rental housing is vacated."]; Assemblymember Hawkins, Floor Statement, Assem. Bill No. 1164 (1995–1996 Reg. Sess.) July 24, 1995, p. 3 [Costa-Hawkins "still allows local governments to continue to protect current tenants from rent increases"].)

[10] We do not address whether there are other exceptions to the general rule stated in Civil Code section 1954.52, subdivision (a)(1).

[11] " 'Residential real property' includes any dwelling or unit that is intended for human habitation." (Civ. Code, § 1954.51, subd. (e).)

[12] " 'Accommodations' means either of the following: [¶] (A) The residential rental units in any detached physical structure containing four or more residential rental units. [¶] (B) With respect to a detached physical structure containing three or fewer residential rental units, the residential rental units in that structure and in any other structure located on the same parcel of land, including any detached physical structure specified in subparagraph (A)." (§ 7060, subd. (b)(1).)

3. The new accommodations are offered for rent or lease within five years of the date the previous accommodations were withdrawn from rent or lease. (§ 7060.2, subd. (d).)

We cannot, conversely, consider Civil Code section 1954.52, subdivision (a)(1) as an exception to section 7060.2, subdivision (d) because the exception would swallow the rule. (Cf. *Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 902 [123 Cal.Rptr.2d 432, 51 P.3d 297] [rejecting a proposed statutory interpretation when the "exception would swallow the rule"].) This is because many cities, including Los Angeles (see L.A. Mun. Code, § 12.26, subd. E), require a landlord to obtain a certificate of occupancy before a tenant may occupy newly constructed real property. (See 7 Miller & Starr, Cal. Real Estate (3d ed. 2001) § 19:224, p. 710.) In such cities, *all* newly constructed residential properties that fall within the parameters of 7060.2, subdivision (d) would *not* be subject to rent control under Civil Code section 1954.52, subdivision (a)(1). Such an interpretation does not harmonize the two statutes. Instead, it renders section 7060.2, subdivision (d) nugatory.

B. *The Language of Civil Code Section 1954.52, Subdivision (a)(1) Permits the City to Promulgate the Ordinance*

Under the plain language of section 7060.2, subdivision (d), City was authorized to enact the Ordinance. Nothing in Civil Code section 1954.52, subdivision (a)(1) expressly states otherwise.

 Plaintiff argues, however, that because Civil Code section 1954.52, subdivision (a)(1) exempts newly constructed residential units from rent control, it supersedes section 7060.2, subdivision (d), which permits rent control to apply to newly constructed residential units. Moreover, plaintiff contends, Civil Code section 1954.52, subdivision (a)(1) should override section 7060.2, subdivision (d) because it contains the phrase "[n]otwithstanding any other provision of law . . . ." This phrase is a " ' "term of art" ' " (*Faulder v. Mendocino County Bd. of Supervisors* (2006) 144 Cal.App.4th 1362, 1373 [51 Cal.Rptr.3d 251]) that overrides other code sections " 'unless it is specifically modified by use of a term applying it only to a particular code section or phrase.' " (*Stone Street, supra*, 165 Cal.App.4th at p. 120, fn. 6, quoting *In re Marriage of Cutler* (2000) 79 Cal.App.4th 460, 475 [94 Cal.Rptr.2d 156].)

 We reject plaintiff's argument because Civil Code section 1954.52, subdivision (a)(1) is modified by subdivision (c) of Civil Code section 1954.52. Civil Code section 1954.52, by its terms, does not affect the authority of cities to "regulate or monitor the basis for eviction." (Civ. Code,

§ 1954.52, subd. (c).) Hence, if section 7060.2, subdivision (d) authorizes cities to enact ordinances that "regulate or monitor the basis for eviction," the statute is not affected by Civil Code section 1954.52, subdivision (a)(1).

The language of section 7060.2, subdivision (d) does not, by itself, clearly indicate whether or not the statute relates to the basis for eviction. As we have explained, however, the legislative history of section 7060.2, subdivision (d), clearly indicates that the statute was enacted to authorize local public entities to promulgate ordinances that discourage landlords from evicting their tenants under the false pretense of going out of business pursuant to the Ellis Act. Thus the Ordinance, enacted pursuant to section 7060.2, subdivision (d), regulates the basis for eviction within the meaning of Civil Code section 1954.52, subdivision (c), and is not precluded by Civil Code section 1954.52, subdivision (a)(1).

Plaintiff's reliance on *Bullard v. San Francisco Residential Rent Stabilization Bd.* (2003) 106 Cal.App.4th 488 [130 Cal.Rptr.2d 819] (*Bullard*) is misplaced. In *Bullard*, the plaintiff challenged a San Francisco rent control ordinance. The ordinance provided that "a landlord who evicts a tenant in order to move into the tenant's unit must offer the tenant another unit, if one is vacant." (*Id.* at p. 489.) The ordinance also regulated the rent that the landlord could charge for the replacement unit. (*Ibid.*) The court held that the rent restriction was preempted by Civil Code section 1954.53, the vacancy decontrol provision of Costa-Hawkins. (*Bullard*, at p. 489.)

The San Francisco rent control board argued that the rent restriction was not preempted because it was a regulation within the meaning of Civil Code section 1954.53, subdivision (e), which preserves local authority to " 'regulate or monitor the grounds for eviction.' " (*Bullard, supra*, 106 Cal.App.4th at p. 491.) The Court of Appeal rejected that argument, holding that the rent restriction had "no logical connection to the basis for an owner move-in eviction." (*Ibid.*) The same is not true here. The very purpose of section 7060.2, subdivision (d) and the Ordinance enacted pursuant to that statute is to thwart evictions based on false pretenses. *Bullard* thus is distinguishable from this case.

C. *Section 7060.2, Subdivision (d) Is the More Specific Statute*

By considering section 7060.2, subdivision (d) an exception to Civil Code section 1954.52, subdivision (a)(1), we are giving precedence to the more specific statutory provision over the more general one. Section 7060.2,

subdivision (d) is the more specific statutory provision because it only deals with certain newly constructed residential rental units that replace units withdrawn under the Ellis Act, whereas Civil Code section 1954.52, subdivision (a)(1) deals more generally with all newly constructed residential rental units that were issued a certificate of occupancy after February 1, 1995.

D. *Costa-Hawkins Expressly Repealed Many Statutes Other Than the Ellis Act*

The legislative history of Costa-Hawkins supports the presumption that Costa-Hawkins did not impliedly repeal section 7060.2, subdivision (d). The genesis of Costa-Hawkins was Assembly Bill No. 1164 (1995–1996 Reg. Sess.) (Assemby Bill 1164). Assemby Bill 1164 stated: "It is the intent of the Legislature to streamline and improve the efficiency of state housing policy efforts by repealing various obsolete, outmoded, and inoperative housing programs and statutes." (Assem. Bill 1164, § 2.) Assembly Bill 1164 also expressly repealed a host of provisions in the Health and Safety Code relating to housing.[13] The absence of any similar express statement regarding section 7060.2, subdivision (d) or an express repeal of that statute, indicates that the Legislature did not intend to do the same with respect to section 7060.2, subdivision (d). (Cf. *Strang v. Cabrol* (1984) 37 Cal.3d 720, 725 [209 Cal.Rptr. 347, 691 P.2d 1013] [applying maxim *expressio unius est exclusio alterius*].) Furthermore, plaintiff has not cited, and we have not found, anything in the legislative history of Assemby Bill 1164 indicating a legislative intent to repeal any provision of the Ellis Act, including section 7060.2, subdivision (d).

E. *The 2002 Amendment to the Ellis Act Indicates That the Legislature Did Not Impliedly Repeal Section 7060.2, Subdivision (d)*

The Ellis Act was amended in 1999 by Senate Bill No. 948 (Sen. Bill No. 948 (1999–2000 Reg. Sess.) §§ 1–4) and again in 2002 by Senate Bill No. 1403 (Sen. Bill No. 1403 (2001–2002 Reg. Sess.) § 5). Of interest here, Senate Bill No. 1403 made nonsubstantive amendments to former section 7060.2, subdivision (c), now section 7060.2, subdivision (d). The last phrase of subdivision (d) was changed from "notwithstanding any exemption from *such a* system of controls for newly constructed accommodations," to "notwithstanding any exemption from *the* system of controls for newly constructed accommodations." (Compare Stats. 1985, ch. 1509, § 1, p. 5560 with

---

[13] Assemby Bill 1164 repealed chapter 3.7 (commencing with § 50540), chapter 5 (commencing with § 50600), chapter 6 (commencing with § 50650), and chapter 11.6 (commencing with § 50810) of part 2 of division 31 of the Health and Safety Code, as well as part 3.5 (commencing with § 51500) of that code. (Assem. Bill 1164, §§ 3–7.)

Stats. 2002, ch. 301, § 5, italics added; see also Sen. Bill No. 1403 (2001–2002 Reg. Sess.) § 5, as introduced Feb. 13, 2002.)

The 2002 amendment to the Ellis Act shows that after Costa-Hawkins was enacted, the Legislature continued to regard section 7060.2, subdivision (d) as the law of this state. This amendment conclusively rebuts plaintiff's position regarding the alleged implied repeal of section 7060.2, subdivision (d). The Legislature would not have amended section 7060.2, subdivision (d) in 2002 if it had repealed that statute with Costa-Hawkins in 1995. We cannot presume the Legislature engaged in an idle act. (See *California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 634 [59 Cal.Rptr.2d 671, 927 P.2d 1175]; *In re B. J. B.* (1986) 185 Cal.App.3d 1201, 1206 [230 Cal.Rptr. 332].)

### F. *Costa-Hawkins Does Not Supersede the Ellis Act*

Plaintiff points out that section 7060.1, subdivision (d) expressly states that nothing in the Ellis Act "[s]upersedes" any provision of title 5 of part 4 of division 3 of the Civil Code (Title 5), which includes Costa-Hawkins. This provision, plaintiff contends, indicates that "the new construction exemption on newly constructed rental units found in Costa-Hawkins supersedes the provisions of the Ellis Act."

A similar argument was rejected in *Drouet, supra,* 31 Cal.4th 583. There, a landlord sought to withdraw a rental property pursuant to the Ellis Act. When the tenants refused to vacate the premises, the landlord brought an unlawful detainer action. As a defense, the tenants claimed that the landlord was engaged in a retaliatory eviction in violation of Civil Code section 1942.5.[14] (*Drouet,* at p. 587.) Relying on the same language of section 7060.1, subdivision (d) that plaintiff relies on in the present case, the tenants argued that nothing in the Ellis Act "superseded" Civil Code section 1942.5. Our Supreme Court agreed. (*Drouet,* at p. 593.) But the court also stated: "It does not follow, however, that [Civil Code] section 1942.5 should be read to supersede the [Ellis] Act. When the Legislature provides that one law does not supersede another, the two are to be construed *together.*" (*Drouet,* at p. 593.) Relying on subdivisions (d) and (e) of Civil Code section 1942.5, the court concluded that "a landlord's bona fide intent to withdraw the property from the rental market under the Ellis Act will defeat the statutory defense of retaliatory eviction." (*Drouet,* at p. 588.)

---

[14] Civil Code section 1942.5, subdivision (a) provides: "If the lessor retaliates against the lessee because of the exercise by the lessee of his rights under this chapter or because of his complaint to an appropriate agency as to tenantability of a dwelling, and if the lessee of a dwelling is not in default as to the payment of his rent, the lessor may not recover possession of a dwelling in any action or proceeding, cause the lessee to quit involuntarily, increase the rent, or decrease any services . . . ."

█ Similarly, in this case, although the Ellis Act does not supersede Costa-Hawkins, it does not follow that Costa-Hawkins supersedes the Ellis Act. The two statutes must be read together and, as we have explained, can and should be interpreted to work together.

Plaintiff's argument is also belied by the legislative history and purpose of section 7060.1, subdivision (d). This provision was originally not part of Senate Bill 505, the bill which enacted the Ellis Act. It was added in order to address concerns regarding the rights of *tenants* protected by Title 5,[15] as well as other laws, including the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.), the Unruh Civil Rights Act (Civ. Code, § 51 et seq.), the unlawful detainer statutes, the Unfair Practices Act (Bus. & Prof. Code, § 17000 et seq.), the relocation assistance laws, and the Community Redevelopment Law (Health & Saf. Code, § 33000 et seq.).[16] Costa-Hawkins, by contrast, was enacted to relieve *landlords* from some of the burdens of "strict" and "extreme" rent control, which the proponents of Costa-Hawkins contended unduly and unfairly interfered with the free market.[17] In light of the purpose of section 7060.1, subdivision (d)—to protect *tenants'* rights—the statute cannot be interpreted as supporting plaintiff's claim that Costa-Hawkins overrides section 7060.2, subdivision (d). (See *Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196] [statute should be interpreted with the aim of " ' "promoting rather than defeating" ' " its purpose].)

█ In sum, plaintiff has not met its burden of showing that " 'there is no rational basis for harmonizing' " (*Garcia, supra,* 16 Cal.4th at p. 477) section 7060.2, subdivision (d) and Costa-Hawkins. Plaintiff thus has not overcome the presumption that Costa-Hawkins did not impliedly repeal section 7060.2, subdivision (d).

---

[15] Title 5 relates to "hiring," including residential leases.

[16] (See Sen. Bill No. 505 (1985–1986 Reg. Sess.) as introduced on Feb. 20, 1985, and May 6, 1985 amendment thereto; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 505 (1985–1986 Reg. Sess.) as amended May 30, 1985, p. 2; Sen. Com. on Judiciary, Analysis of Sen. Bill No. 505 (1985–1986 Reg. Sess.) as amended May 15, 1985, p. 5; Assem. Com. on Judiciary, Analysis of Sen. Bill No. 505 (1985–1986 Reg. Sess.) as amended May 30, 1985, p. 1.)

[17] The proponents of Costa-Hawkins also argued that the "strict" and "extreme" rent control hurt the low-income tenants it was intended to help by making housing for such tenants less available. (See Assem. Floor Analysis, Assem. Bill No. 1164 (1995–1996 Sess.) July 24, 1995, pp. 1, 6; Comment, *Does the Costa-Hawkins Act Prohibit Local Inclusionary Zoning Programs?* (2001) 89 Cal. L.Rev. 1847, 1869–1871; E. Reynolds & K. Conner, Enrolled Bill Rep. on Assem. Bill No. 1164, *supra,* July 27, 1995, pp. 5–7.)

## DISPOSITION

The judgment is affirmed. City is awarded costs on appeal.

Klein, P. J., and Croskey, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 15, 2009, S173213. George, C. J., did not participate therein.