Filed 9/2/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JASON MAK et al.,<br><br>     Plaintiffs and Appellants,<br><br>v.<br><br>CITY OF BERKELEY RENT STABILIZATION BOARD,<br><br>     Defendant and Respondent;<br><br>ALEXANDER ZIEM et al.,<br><br>     Real Parties in Interest. | A143671<br><br>(Alameda County<br>Super. Ct. No. RG13702962) |

We here affirm the rejection by the City of Berkeley Rent Stabilization Board (Rent Board) and by the superior court of a landlord's transparent attempt to circumvent the provisions of local rent control provisions. Appellants Jason and Karen Mak own a residential rental property with four apartments in Berkeley. In February 2012 they served on Elizabeth Burns, a tenant in one of those apartments for 28 years, a 60-day eviction notice, asserting that Jason Mak intended to occupy the apartment. In April 2012, the Maks and Burns entered a written agreement under which Burns agreed to vacate the apartment, stating that Burns was not doing so pursuant to the 60-day notice, and that such notice "shall upon occupant vacating, be conclusively deemed withdrawn." Burns vacated the apartment at the end of June and months later the Maks rented the unit to new tenants, Alexander and Andrea Ziem, at more than double the rent that Burns had been paying. In response to the Ziems's application to the Rent Board to lower the permissible rent to that paid by Burns, the Maks contended that Burns had voluntarily vacated the apartment, so that under the terms of the Costa-Hawkins Rental Housing Act,

1

Civil Code section 1954.50 et seq. [1] (the Act), the Rent Board was prohibited from limiting the rent that could be charged at the commencement of the new tenancy. But the Act does not prohibit the application of rent control limits to a new tenant if "the preceding tenancy has been terminated by the owner by notice pursuant to section 1946.1" (§§ 1954.52, subd. (a)(B)(i); 1954.52, subd. (c)), and the Rent Board's regulation (Berkeley Rent Stabilization Bd. Regs., ch. 10, reg. 1016 (Regulation 1016)) creates a rebuttable presumption that a tenant who moves out within one year of service of an owner move-in eviction notice has moved out pursuant to that notice. At an evidentiary hearing before the Rent Board, the Maks failed to present evidence overcoming the presumption and the Rent Board therefore determined that the lawful rent level for Burns was the maximum that could be charged to the Ziems. The superior court agreed when it denied the Maks' petition for a writ of mandate to overturn that decision. We too agree that the Maks's subterfuge was properly rejected. We shall therefore affirm the denial of the writ petition.

## Statutory and Regulatory Context

"In August 1995, California enacted the [Act], which established 'what is known among landlord-tenant specialists as "vacancy decontrol," declaring that "[n]otwithstanding any other provision of law," all residential landlords may, except in specified situations, "establish the initial rental rate for a dwelling or unit." (. . . § 1954.53, subd. (a).)' [Citation.] The effect of this provision was to permit landlords 'to impose whatever rent they choose at the commencement of a tenancy.' [Citation.] The Legislature was well aware, however, that such vacancy decontrol gave landlords an incentive to evict tenants that were paying rents below market rates. [Citation.] Accordingly, the statute expressly preserves the authority of local governments 'to regulate or monitor the grounds for eviction.' (. . . § 1954.53, subd. (e).)" (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1237-1238.)

---

[1]     All statutory references are to the Civil Code unless otherwise noted.

2

Specifically, section 1954.52, subdivision (a) provides in pertinent part that "an owner of residential real property may establish the initial and all subsequent rental rates for a dwelling or a unit . . . which . . . [¶] . . . has a certificate of occupancy issued after February 1, 1995" but that "[t]his paragraph does not apply to . . . [¶] . . . [a] dwelling or unit where the preceding tenancy has been terminated by the owner by notice pursuant to section 1946.1." [2] Section 1954.53, subdivision (a) repeats that "an owner of residential real property may establish the initial rental rate for a dwelling or unit, except where . . . [¶] . . . [t]he previous tenancy has been terminated by the owner by notice pursuant to section 1946.1." Section 1954.52, subdivision (c) provides: "Nothing in this section shall be construed to affect the authority of a public entity that may otherwise exist to regulate or monitor the grounds for eviction," and this qualification is repeated in section 1954.53, subdivision (e).

Under Berkeley's "Rent Stabilization and Eviction for Good Cause Ordinance" (rent ordinance) (Berkeley Mun. Code, ch. 13.76), "No landlord shall be entitled to recover possession of a rental unit covered by the terms of this chapter unless said landlord shows the existence of one of the following grounds: [¶] 9a. The landlord seeks in good faith with honest intent and without ulterior motive to recover possession for his/her own use and occupancy as his/her principal residence for a period of at least 36

_____

[2]     Section 1946.1 provides that "(a) . . . a hiring of residential real property for a term not specified by the parties, is deemed to be renewed as stated in Section 1945, at the end of the term implied by law unless one of the parties gives written notice to the other of his or her intention to terminate the tenancy, as provided in this section. [¶] (b) An owner of a residential dwelling giving notice pursuant to this section shall give notice at least 60 days prior to the proposed date of termination. . . ."

Notwithstanding the reference in the agreement between the Maks and Burns to notice having been given pursuant to section 1946, the parties do not dispute that the February 2012 notice served on Burns was served pursuant to section 1946.1. Regulation 1016, quoted in text, refers to a 30-day notice under section 1946, but subparagraph D of the regulation makes clear that the regulation applies to any request from a landlord to vacate a unit so the landlord or a relative of the landlord may occupy the unit as his or her principal residence.

3

consecutive months . . . ." (Berkeley Mun. Code, § 13.76.130, subd. (A).)[3] The Rent Board has adopted Regulation 1016, entitled "Rent Level following an Owner Move-In Notice of Eviction." This regulation provides as follows: "A. A landlord who serves a 30-Day Notice of Termination of Tenancy pursuant to Berkeley Municipal Code section 13.76.130.A(9) for the purpose of recovering possession of the unit for his or her own use and occupancy as a principle [*sic*] residence or the principle [*sic*] residence of a relative may rescind the notice or stop eviction proceedings but, if the tenant vacates within one year of the date of service of the notice, the tenancy is presumed to have been terminated by the owner as a result of the notice. The rental rate for the next tenancy established in the vacated unit shall be no more than the maximum allowed under the Rent Ordinance for the tenant who vacated, plus any subsequent increases authorized by the Rent Board. [¶] B. This presumption applies even though the tenant vacates the unit after the notice has been rescinded. A written statement from the tenant that he is leaving of his own volition signed as part of a settlement whereby the tenant is required to vacate the unit is insufficient to rebut this presumption. [¶] C. A landlord may rebut the presumption by requesting a Certificate of permissible Rent Level and following the procedures in Regulation 1007 for challenging the determination of the permissible rent level stated in the certificate. [¶] D. A written or oral request from a landlord to vacate a unit so the landlord or a relative of the landlord may occupy the unit as his principle [*sic*] residence shall be treated as a Notice to Terminate Tenancy pursuant to . . . section 1946 for the purpose of determining the rent level when the unit is subsequently rented."

---

[3] Subdivision (A)(9b) of the rent ordinance also authorizes the recovery of possession for the use of designated relatives of the landlord. Subdivision (A)(9g) provides: "It shall be evidence that the landlord has acted in bad faith if the landlord or the landlord's qualified relative for whom the tenant was evicted does not move into the rental unit within three months from the date of the tenant's surrender of possession of the premises or occupy the said unit as his/her principal residence for a period of at least 36 consecutive months."

## Factual Background

On February 23, 2012, the Maks caused to be served on Burns, a long-term tenant of the Maks' four-unit residential apartment building in Berkeley, a document entitled "Notice of Termination of Tenancy." The notice advised Burns that her tenancy "is terminated as of sixty (60) days after service on you of this notice" and that possession of the premises was sought pursuant to Berkeley Municipal Code subsection 13.76.130.A.9. "The good cause for recovering possession," the notice stated, "is that the landlord seeks in good faith with honest intent and without ulterior motive to recover possession for his use and occupancy as his principal residence for a period of at least 36 consecutive months. The intended occupant is Jason S. Mak."

Negotiations through attorneys for the parties ensued, leading to the entry of an agreement between the parties on April 23, 2012, the last day of the 60-day period. The four-page agreement is entitled "Agreement and Release Regarding Vacating of Rented Premises" and provides in relevant part as follows: "The parties stipulate and acknowledge that occupant will vacate the premises pursuant to this agreement for the consideration set forth herein, and *not pursuant to a notice given under . . . section 1946. Any such notices, if given, shall, upon occupant vacating, be conclusively deemed withdrawn with occupant's express knowledge and consent as if never given and shall have no effect whatsoever.* The parties agree that by this agreement, occupant is allowing the owner to occupy the premises, sell the premises, or potentially obtain greater rent from new prospective ants. Occupant has therefore requested, and owner has therefore agreed, that owner will pay to occupant [a designated sum, part to be paid within two days of signing and the balance to be paid upon vacation of the premises]. . . . [¶] . . . [¶] In the event that occupant fails to timely vacate, then occupant agrees to immediately return all payments to owner made to occupant pursuant to the terms of this agreement and release. . . . [¶] . . . As additional consideration for this agreement and release, owner agrees to waive the rent and unlawful detainer damages for the premises from April 1, 2012 to June 30, 2012 on the express condition that occupant timely vacates the premises

on or before June 30, 2012. In the event occupant fails to timely vacate, then any and all waived rent shall immediately become due and payable."(Italics added.)

The agreement also contains a general release by Burns, a waiver of the provisions of section 1542, and an acknowledgement that the parties "have had the opportunity to consult with counsel of their choosing and the Berkeley Rent Board, and that they voluntarily execute this Agreement with full knowledge of its significance and with the express intent to affecting the legal consequences provided by Section 1542 of the California Civil Code, i.e., the extinguishment of all obligations."

On June 30, 2012, Burns vacated the premises and received the consideration she had been promised. Jason Mak never moved into the premises and in March 2013 the Maks rented the premises to the Ziems at the rental rate of $2,395 per month. In May 2013, pursuant to a request by the Ziems, the Rent Board issued a "Certificate of Permissible Rent Level" establishing the lawful rent ceiling as $1, 074.68 per month, the maximum rent that could have been charged Burns had she still been in occupancy. The Maks appealed the certificate, leading to an evidentiary hearing before a hearing examiner. The Rent Board subsequently issued a final decision incorporating the decision of the hearing examiner upholding the validity of Regulation 1016 and finding that the presumption created by the regulation, that Burns had vacated the premises as a result of the 60-day notice, had not been rebutted.

The Rent Board decision recites substantial evidence that Jason Mak never intended to occupy the premises and that the sequence of events preceding Burns' departure "is squarely within that described in the legislative history of Regulation 1016; specifically, an owner notifies a tenant of their intent to end the tenancy for the owner or a relative to move in, and a tenant who initially refuses to move ends up negotiating a move-out agreement with the owner if an eviction proceeding is begun. Then, the owner rents the vacated unit at market in the belief that the tenant 'voluntarily' vacated the unit." Here, the decision continues, "It is true that Ms. Burns willingly agreed to move out for a certain sum of money. What hasn't been shown, however, is whether there would have been an agreement at all had the [Maks] not set things in motion by

6

informing her that owner Jason Mak intended to reside in her unit. As to that question, no testimony or other evidence was presented. In fact, the evidence presented suggests otherwise."

The Maks filed a petition for a writ of mandate to set aside the Rent Board decision and the superior court issued an extensive order denying the petition. The court rejected the Maks' challenge to the validity of Regulation 1016 and held that substantial evidence supports the finding that Burns "moved out in part 'because of' the formal notice. The owners sent an informal owner move-in letter on 1/30/11, but negotiations did not develop in earnest until after the owners served the formal notice on [2]/23/12. This suggests that the notice in fact generated negotiating leverage that in part caused the former tenant to vacate the property." The court held that Regulation 1016 is "a reasonable regulation of evictions," not inconsistent with or preempted by . . . section 1954.53, subdivision (a). "Regulation 1016 is a narrowly tailored remedy for the misuse of owner move-in notices [and] is an appropriate regulation of evictions. The presumption in the regulation is triggered only when an owner move-in notice is not followed by an owner move-in within one year, the presumption is rebuttable and allows for owners to put in evidence of their good faith, and the remedy is proportional to the wrong in that it prevents owners from profiting from the use of less than good faith notices. Regulation 1016 is not an overbroad or haphazard deterrent to inappropriate use of owner move-in notices or rent regulation in disguise."

The Maks have timely appealed from the denial of their writ petition.

**Discussion**

On appeal, the Maks do not dispute that substantial evidence supports the finding that Burns, the former tenant, was prompted to vacate the premises at least in part by the 60-day notice served upon her and that the presumption created by Regulation 1016 therefore has not been rebutted. Their challenge is to the validity of the regulation, which

7

they argue is preempted by the Act.[4] The Santa Monica Rent Control Board and the City of West Hollywood have submitted an amicus curiae brief arguing that "under the facts of this case, Regulation 1016 is beside the point" because the Rent Board's order must be sustained simply by virtue of the terms of the Act. There is no question "that general state law does not preclude [a] city from imposing maximum limits on residential rents within its territory or from restricting the grounds for evicting tenants for the purpose of enforcing those limits insofar as such control of rents and evictions is a proper exercise of the police power." (*Birkenfeld v. City of Berkeley* (1976) 17 Cal.3d 129, 153.) Under the Act, adopted in 1995, property owners have the unrestricted right "to impose whatever rent they choose at the commencement of a tenancy" (*Action Apartment Assn., Inc. v. City of Santa Monica, supra,* 41 Cal.4th at p. 1237), but the statute does not preclude the application of rent control limits if "[t]he previous tenancy has been terminated by the owner by notice pursuant to Section 1946.1." (§§ 1954.53, subd. (a)(1); 1954.52, subd. (a)(B)(i).) Since the Rent Board found, based on evidence the sufficiency of which is not challenged, that the Burns tenancy was terminated pursuant to such a notice, it follows without more that its order establishing the maximum rental rate for the property (not claimed to be confiscatory) is valid and enforceable. As the trial court observed, the agreement between Burns and the Maks may provide some evidence as to whether Burns vacated the premises pursuant to the notice, but it is not dispositive and certainly is not binding on non-parties to the agreement, such as the Rent Board and the Ziems. (*S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, 349 ["The label placed by the parties on their relationship is not dispositive, and subterfuges are not countenanced."].)

---

[4]     The superior court's order held preliminarily that the Rent Board erred in considering the voluntariness of the prior tenant's decision to vacate the premises to be relevant, and the Maks therefore also argue that the board erred when it applied a voluntariness standard in its ruling. However, whether the prior tenant vacated voluntarily is the other side of the coin as to whether the tenant vacated in response to the notice to vacate. That factor is not irrelevant.

In all events, Regulation 1016 serves a valid purpose in specifying that the rental rate of a new tenant may not exceed that of a former tenant who vacates pursuant to an owner move-in termination notice, and creates a rational but rebuttable presumption that simplifies the task of proof. The Maks argue that the regulation is preempted by the terms of the Act that permit the owner to establish any rental rate for a new tenant but, as just indicated, there is no inconsistency with or preemption by the statute since this permission does not apply if the prior tenant vacates pursuant to a notice of termination.

Moreover, as also noted above, the Act expressly provides that it shall not "be construed to affect the authority of a public entity that may otherwise exist to regulate or monitor the grounds for eviction." (§§ 1954.52, subd. (c), 1954.53, subd. (e).) The Maks contend that this provision has no application to Regulation 1016, since unlike the rent ordinance itself the regulation imposes no restrictions on the grounds for eviction and merely limits the initial rent that may be charged to a new tenant. The Maks place heavy reliance on the decision of this court in *Bullard v. San Francisco Residential Rent Stabilization Bd.* (2003) 106 Cal.App.4th 488, which invalidated a provision in San Francisco's rent control ordinance requiring a landlord who evicts a tenant in order to move into the tenant's unit to offer the tenant another unit at comparable rent if another unit is available. The court rejected the argument that this mandate was authorized as a means of regulating evictions because the provision applied "to landlords acting in good faith as well as unscrupulous landlords" and was "contingent on the availability of another unit, . . . provid[ing] only an occasional, weak deterrent." (*Id.* at p. 491.) The court's rejection of "such a haphazard form of vacancy control" (*id.* at p. 492) provides no basis for rejecting the measure here, which applies only if the owner has terminated the prior tenancy based on a bad faith assertion of the intent to occupy the premises. We agree with the trial court that Regulation 1016 "is a reasonable regulation of evictions, as Berkeley can create an administrative deterrent to discourage landlords from serving less than good faith owner move-in notices. As a means to deter owners from using a less than good faith owner move-in notice under [Berkeley Municipal Code section] 13.76.130.A(9), Regulation 1016 is reasonably designed 'to regulate or monitor the

9

grounds for eviction.' (. . . § 1954.53(e).) [Citation.] Viewed as a sanction for the misuse of owner move-in notices, Regulation 1016 does not regulate 'the initial rate for a dwelling unit' (. . . § 1953.54(a)) and is a permissible regulation of 'the grounds for eviction.' (. . . § 21954.53(e))."

Nor does the decision in *Palmer/Sixth Street Properties, L.P. v. City of Los Angeles* (2009) 175 Cal.App.4th 1396 (*Palmer*), also relied on by the Maks, support their contention that Regulation 1016 is invalid. *Palmer* invalidated a local measure that required developers to provide a certain number of affordable housing units at regulated rental levels as conflicting with and preempted by the provisions of the Act that permit the property owner to designate the initial rental rate of residential units. The court there held that measure "directly conflicts with Costa-Hawkins Act's vacancy decontrol provisions" (175 Cal.App.4th at p. 1411), but there is no such conflict in the present case. The Act explicitly excludes from vacancy decontrol situations where "the preceding tenancy has been terminated by the owner by notice pursuant to Section 1946.1." (§§ 1954.52, subd. (a)(B)(i), 1954.53, subd. (a)(1).)

A far more comparable case, supporting the validity of Regulation 1061, is *Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles* (2009) 173 Cal.App.4th 13. That case upheld the validity of a local ordinance providing that if a landlord demolishes residential property subject to rent control and builds new residential rental units on the same property within five years, the newly constructed units are also subject to the rent control law. This ordinance was enacted pursuant to a provision of the Ellis Act (Gov. Code, § 7060.2, subd. (d)) to "discourage landlords from evicting their tenants under the false pretense of going out of business pursuant to the Ellis Act." (173 Cal.App.4th at p. 27.) In rejecting the argument that the measure was prohibited by the later-enacted provisions of the Costa-Hawkins Rental Housing Act, the court pointed out that "section 1954.52, subdivision (a)(1) is modified by subdivision (c) of . . . section 1954.52 [which], by its terms, does not affect the authority of cities to 'regulate or monitor the basis for eviction.' " (173 Cal.App.4th at p. 26.) The court held the ordinance "regulates the basis for eviction within the meaning of . . . section 1954.52,

10

subdivision (c), and is not precluded by . . . section 1954.52, subdivision (a)(1)." (173 Cal.App.4th at p. 27.)

As both the Rent Board and the superior court recognized, Regulation 1016 is a reasonable means of discouraging a landlord from evicting a tenant based on the false representation that the landlord or a family member intends to occupy the premises, and then re-renting the premises at a higher rental rate than could have been charged to the former tenant. The record amply demonstrates that this is what occurred in the present case. When Burns agreed to vacate the premises and to enter the agreement undoubtedly prepared by Maks' attorney, she had no reason to believe that the Maks had misstated their intentions and that her eviction was not authorized by the Berkeley ordinance. Nor did she have any reason not to sign the agreement acknowledging that the notice of termination would be withdrawn if she vacated and accept the substantial cash payment offered her by the Maks. Burns had no reason to doubt that if she did not sign the agreement she would still have been required to vacate the premises, without receiving the cash consideration; indeed, the agreement expressly provides that the termination notice would be withdrawn only if she did vacate the premises. Under the circumstances, the termination notice inevitably was a significant factor causing Burns to agree to the termination of her tenancy. The finding that the tenancy was terminated pursuant to the termination notice can hardly be questioned, notwithstanding the attempt to mischaracterize the situation in the agreement that Burns agreed to sign. Maintaining the rent level of the former tenant is a rational and proportional deterrent to the use of such an artifice in the future.

11

## Disposition

The judgment is affirmed. The Rent Board and the Ziems shall recover their costs on appeal.

_____
Pollak, Acting P.J.

We concur:

_____
Siggins, J.

_____
Jenkins, J.

Trial Court: Alameda County Superior Court

Trial Judge: Hon. Evelio Grillo

Fried & Williams, LLP, Matthew P. Quiring for Plaintiffs and Appellants

Matt Brown, Matthew Siegel, and Chanee Franklin for Defendant and Respondent

J. Stephen Lewis for Santa Monica Rent Control Board, Jenkins & Hogin, LLP, Michael Jenkins for City of West Hollywood, and Barbara J. Parker, Doryanna Moreno, Richard Illgen, Christina Lum, NLC, and Jessica Leavitt for City of Oakland as Amicus Curiae on behalf of Defendant and Respondent

East Bay Community Law Center, Marc S. Janowitz and Laura Lane for Real Parties of Interest