Filed 4/15/26; Modified and Certified for Partial Pub. 5/14/26 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| APARTMENT ASSOCIATION OF LOS ANGELES COUNTY, INC., | B336071 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 23STCP00720) |
| v. | |
| CITY OF LOS ANGELES et al., | |
| Defendants and Respondents; | |
| COMMUNITY POWER COLLECTIVE et al., | |
| Interveners and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mitchell L. Beckloff, Judge.  Affirmed in part and reversed in part, with directions.

Rutan & Tucker, Douglas J. Dennington, Peter J. Howell, and Erik Leggio, for Plaintiff and Appellant.

Hydee Feldstein Soto, City Attorney (Los Angeles), Denise C. Mills, Chief Deputy City Attorney, Kathleen A. Kenealy, Chief Assistant City Attorney, Shaun Dabby Jacobs, Assistant City Attorney, Elaine Zhong and Merete Rietveld, Deputy City Attorneys, for Defendants and Respondents.

Public Counsel, Faizah Malik, Alisa Randell, Jonathan Jager; Susman Godfrey, Ellie Dupler, Halley Josephs, Rohit D. Nath, Anna C. Gorn; Legal Aid Foundation of Los Angeles, Anna Hales; Bet Tzedek Legal Services, Andrew Marmor, Emily Chong, Ed Elsner, Matthew Calcanas, and Nicholas Lampros, for Intervenors and Respondents.

David Chiu, City Attorney (San Francisco), Tara M. Steeley and Manu Pradhan, Deputy City Attorneys; Douglas Sloan, City Attorney (Santa Monica), Romy Ganschow, Chief Deputy City Attorney, and Andrew Braver, Deputy City Attorney for City and County of San Francisco and City of Santa Monica, as Amici Curiae on behalf of Defendants and Respondents.

—————————————

## INTRODUCTION

This case involves a challenge by an association of landlords to two rent control ordinances enacted by the City of Los Angeles (City) after certain COVID-19 related tenant protections expired. The first ordinance is the Eviction Threshold Ordinance (Ordinance No. 187763), which limits evictions for failure to pay rent to cases where the amount of rent owed is more than "one month of fair market rent." The second ordinance is the Relocation Assistance Ordinance (Ordinance No. 187764), which requires payment of relocation assistance to tenants not in

2

rent-controlled units who are displaced by certain lawful rent increases.  The Apartment Association of Greater Los Angeles (AAGLA) filed a petition for writ of mandate challenging the two ordinances on the basis that they were both preempted by state law.  AAGLA appeals from the judgment entered after the superior court rejected both claims and denied the petition.

AAGLA contends the Eviction Threshold Ordinance's monetary threshold requirement for evictions based on nonpayment of rent is an improper procedural limitation on the timeline for summary evictions under the Unlawful Detainer Act (Code Civ. Proc., § 1159 et seq.), and exceeds the City's authority even if viewed as a substantive limitation.  We conclude, as did the superior court, the Eviction Threshold Ordinance established a substantive defense to eviction rather than a procedural limitation for landlords preempted by the unlawful detainer statutes.  We also conclude it is within the City's police power.

AAGLA also argues the Relocation Assistance Ordinance's requirement that landlords pay relocation assistance to tenants displaced by lawful rent increases is preempted by the Costa-Hawkins Rental Housing Act (Costa-Hawkins Act) (Civ. Code, § 1954.40 et seq.).  As this Court recently concluded in *California Apartment Assn. v. City of Pasadena* (2025) 117 Cal.App.5th 187 (*Pasadena*), review den. April 1, 2026, S295001, "[r]equiring landlords to make such payments when the [Costa-Hawkins Act] specifically authorizes landlords to increase the rent (for nonrent-controlled units) to fair market value frustrates the purpose of the [A]ct; thus, the relocation assistance requirement is preempted." (*Id.* at p. 200.)  Accordingly, we affirm in part, reverse in part, and remand with directions.

3

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *Regulatory Background*

The City regulates residential rents and evictions through the Rent Stabilization Ordinance (RSO) set forth in the City of Los Angeles Municipal Code (LAMC) sections 151.00 through 151.35.  The RSO regulates rent increases for residential "rental units" as defined in the RSO (LAMC, §§ 151.04, 151.06), which generally do not include dwellings built after 1978 (*id.*, § 151.02).  The RSO also regulates the justifiable grounds for evictions, including at-fault and no-fault evictions.  (*Id.,* § 151.09).  If a landlord evicts a tenant from a covered rental unit for grounds unrelated to acts of the tenant, the RSO requires a landlord to pay relocation assistance.  (*Id.*, § 151.09.)

The state Tenant Protection Act of 2019 (TPA) (Assem. Bill No. 1482 (2019-2020 Reg. Sess.)), which added sections 1947.12 and 1946.2 to the Civil Code, provides an additional layer of statewide anti-"rent-gouging" and eviction control law.  In relevant part, the TPA prohibits evictions without "just cause" (Civ. Code, § 1946.2) and restricts owners of residential rental property other than housing built "within the previous 15 years" from increasing annual rents more than "5 percent plus the percentage change in the cost of living, or 10 percent, whichever is lower" (*id.*, § 1947.12, subds. (a)(1) & (d)(4); see *2710 Sutter Ventures, LLC v. Millis* (2022) 82 Cal.App.5th 842, 864).  The TPA "also provides for relocation assistance equivalent to one month's rent, regardless of the tenant's income level, in the event of a 'no-fault just cause' eviction.  (Civ. Code, § 1946.2, subd. (d).)" (*Pasadena, supra,* 117 Cal.App.5th at p. 231, fn. 16.)  For renters in the City, the TPA provides just cause eviction protections—and

4

a state-mandated ceiling on annual rental increases—to a subset of rental units not covered by the RSO: those built after 1978 but before the last 15 years.

In January 2023, the City adopted a Just Cause For Eviction Ordinance (Ordinance No. 187737) extending just cause eviction protections to rental housing units not subject to the RSO.  In adopting the Just Cause Ordinance, the City found it was more protective than the TPA, "by further limiting the reasons for termination of a residential tenancy, providing for higher relocation assistance amounts, and providing additional tenant protections that are not prohibited by any other provision of law."  Consistent with the RSO, the Just Cause Ordinance permits a landlord to commence the eviction process where a "tenant has defaulted in the payment of rent."

B.     *The City's Eviction Threshold Ordinance and Relocation Assistance Ordinance*

In 2020, during the economic disruption of the COVID-19 pandemic, the City instituted temporary protections against "no fault" evictions and certain evictions for failure to pay rent.

In February 2023, as the COVID-19 eviction protections were drawing to a close, the City Council adopted the two ordinances at issue in this case.  First, it adopted the Eviction Threshold Ordinance (Ordinance No. 187763).  The ordinance amended the RSO and the Just Cause Ordinance by restricting a landlord's ability to bring an unlawful detainer action until a tenant owes more than "one month of fair market rent," according to the figures set annually by the United States Department of Housing and Urban Development (HUD) for an

5

equivalent sized rental unit in the Los Angeles metropolitan area.

Second, the City Council adopted the Relocation Assistance Ordinance (Ordinance No. 187764). The ordinance also amended the RSO and the Just Cause Ordinance by requiring payment of relocation assistance to tenants who "elect[] to relinquish their tenancy following a proposed rental increase that exceeds the lesser of (1) the Consumer Price Index—All Urban Consumers, plus five percent, or (2) ten percent." The relocation assistance amount due under the ordinance is three times the fair market monthly rent for a similar size unit in the Los Angeles metropolitan area, as established by HUD. The Relocation Assistance Ordinance effectively extends relocation assistance protection to tenants in non-RSO units built within the last 15 years, which are not subject to the TPA's limit on rent increases.

Both ordinances have been in effect since March 27, 2023.

C.     *AAGLA's Petition for Writ of Mandate*

In March 2023, the AAGLA filed a petition for writ of mandate under Code of Civil Procedure section 1085 and complaint for declaratory relief, challenging both newly enacted ordinances on the basis that they conflicted with and were preempted by state law. The City and intervenors Community Power Collective and InnerCity Struggle (Intervenors) defended the ordinances against the challenges.

After hearing argument, the superior court issued a detailed written order concluding neither ordinance was preempted by state law. The court determined the Eviction Threshold Ordinance was a substantive regulation of the grounds

6

for eviction within the City's police power, not a procedural limitation preempted by the state unlawful detainer statutes, and that any "procedural impact" of the ordinance was "necessary to regulate the substantive grounds for eviction."  The court also determined the Relocation Assistance Ordinance "does not directly regulate the rental rates landlords may charge for any rental units," and that although "the deterrent effect of the Relocation Assistance Ordinance seemingly conflicts with the Costa-Hawkins provisions permitting landlords" to set rental rates, it was saved by the fact that the Act preserves local authority to "regulate or monitor the basis for eviction" (Civ. Code, § 1954.52, subd. (c)).

The court denied AAGLA's petition and request for declaratory relief, and it entered judgment in favor of the City.

AAGLA timely appealed.

## DISCUSSION

AAGLA contends the challenged ordinances are preempted by state law.  We examine each in turn.

A.    *Standard of Review*

Whether state law preempts a municipal ordinance is a question of law we consider de novo.  (See *Chevron U.S.A. Inc. v. County of Monterey* (2023) 15 Cal.5th 135, 143 (*Chevron*); see also *Pasadena, supra,* 117 Cal.App.5th at p. 228; *Coyne v. City and County of San Francisco* (2017) 9 Cal.App.5th 1215, 1224 (*Coyne*).)

7

B.      *Preemption Principles*

As this Court summarized in *Pasadena, supra,*
117 Cal.App.5th at page 228, Article XI, section 7 of the
California Constitution provides that a " 'city may make and
enforce within its limits all local, police, sanitary, and other
ordinances and regulations not in conflict with general laws.' "
But " ' "[i]f otherwise valid local legislation conflicts with state
law, it is preempted by such law and is void," ' " (*Chevron, supra,*
15 Cal.5th at p. 142), subject to limited exemptions not at issue
here.[1]  A conflict may arise " ' "if the local legislation ' "duplicates,
contradicts, or enters an area fully occupied by general law,
either expressly or by legislative implication." ' " ' " (*Ibid.*)  Here,
as to both ordinances, AAGLA claims a conflict exists based on
contradiction of state law.  AAGLA does not argue that express or

---

[1]      "Under article XI, section 5, subdivision (a) of the
California Constitution, a charter city such as [Los Angeles] is
exempt from the ' " 'conflict with general laws' " ' restrictions
under section 7 ' "*with respect to its municipal affairs.*" ' "
(*Pasadena, supra,* 117 Cal.App.5th at p. 228, fn. 13; see *Sherwin-
Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893, 897,
fn. 1; *City of Rancho Palos Verdes v. State of California* (2025)
114 Cal.App.5th 13, 23 [discussing this "limited" exemption
known as "the 'home rule' or municipal affairs doctrine"].)
"[R]ent control is not a municipal affair as to which a charter
provision would prevail over general state law" (*Birkenfeld v.
Berkeley* (1976) 17 Cal.3d 129, 141 (*Birkenfeld*)), and the City's
relocation assistance and eviction threshold requirements do not
constitute "municipal affairs."

implied field preemption should apply here.[2]  "The party alleging preemption 'has the burden of demonstrating' it."  (*Ibid.*)

---

[2]     Field preemption applies when the Legislature has expressly or impliedly manifested its intent to fully occupy the area.  (*Chevron, supra,* 15 Cal.5th at p. 142.)  " '[L]ocal regulation is invalid if it attempts to impose additional requirements in a field which is fully occupied by statute.' "  (*American Financial Services Assn. v. City of Oakland* (2005) 34 Cal.4th 1239, 1252.)  " '[A]bsent a clear indication of preemptive intent from the Legislature,' we presume that local regulation 'in an area over which [the local government] traditionally has exercised control' is not preempted by state law."  (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1242 (*Action Apartment*).)

Implied field preemption "occurs when:  (1) general law so completely covers the subject as to clearly indicate the matter is exclusively one of state concern; (2) general law partially covers the subject in terms clearly indicating a paramount state concern that will not tolerate further local action; or (3) general law partially covers the subject and the adverse effect of a local ordinance on transient citizens of the state outweighs the possible municipal benefit."  (*Big Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139, 1157-1158; accord, *Chevron, supra,* 15 Cal.5th at p. 142; see, e.g., *Birkenfeld, supra*, 17 Cal.3d at pp. 149, 152 [local regulation requiring landlords to obtain certificates of eviction before seeking repossession of rent-controlled units preempted because state law fully occupied the field of landlord's possessory remedies]; *Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles* (2006) 136 Cal.App.4th 119, 132 [Legislature intended state law to fully occupy the field regarding the period of time a tenant's rent payment is frozen after termination of a landlord's Section 8 agreement; thus, a municipal ordinance purporting to confer greater protections on tenants was preempted].)

"[P]reemption based on contradiction applies when the local law is 'inimical' to state law." (*Chevron, supra,* 15 Cal.5th at p. 145; see *City of Riverside v. Inland Empire Patients Health & Wellness Center, Inc.* (2013) 56 Cal.4th 729, 743 (*Riverside*).) Under contradiction preemption, " 'state law may preempt local law when local law prohibits not only what a state statute "demands" but also what the statute permits or authorizes.' " (*Chevron, supra,* 15 Cal.5th at p. 149, quoting *Riverside,* at p. 763 (conc. opn. of Liu, J.).) "Thus, no inimical conflict will be found where it is reasonably possible to comply with both the state and local laws." (*Riverside,* at p. 743; accord, *San Francisco Apartment Assn. v. City and County of San Francisco* (2024) 104 Cal.App.5th 1218, 1227 (*SFAA 2024*); see *Chevron,* at p. 150 ("compliance with both laws must be '*reasonably* possible' "].) But "when a statute or statutory scheme seeks to promote a certain activity and, at the same time, permits more stringent local regulation of that activity, local regulation cannot be used to . . . frustrate the statute's purpose." (*Great Western Shows v. County of Los Angeles* (2002) 27 Cal.4th 853, 868; accord, *Chevron U.S.A., Inc. v. County of Monterey* (2021) 70 Cal.App.5th 153, 172; see *Riverside*, at p. 760; see also, e.g., *International Brotherhood of Electrical Workers v. City of Gridley* (1983) 34 Cal.3d 191, 202 [" 'Although the Legislature did not intend to preempt all aspects of labor relations in the public sector [by enacting the Meyers-Milias-Brown Act], we cannot attribute to it an intention to permit local entities to adopt regulations which would frustrate the declared policies and purposes of [that legislation]' "]; *AIDS Healthcare Foundation v. Bonta* (2024) 101 Cal.App.5th 73, 88 (*AIDS Healthcare Foundation*) [state law preempted local regulations where state law "seeks to promote higher density

housing projects and allows for 'more stringent local regulation' of housing projects, but local housing density caps are being used to 'frustrate the statute's purpose' "].)

When "[r]uling on a facial challenge to a local ordinance, the court considers the text of the measure itself, not its application to any particular circumstances or individual." (*T-Mobile West LLC v. City and County of San Francisco* (2019) 6 Cal.5th 1107, 1117; accord, *Pasadena, supra,* 117 Cal.App.5th at p. 233; *San Francisco Apartment Assn. v. City and County of San Francisco* (2016) 3 Cal.App.5th 463, 487.)  In assessing a facial challenge, " '[t]he proper focus of constitutional inquiry is the group for whom the law is a restriction, not the group for whom the law is irrelevant.' "  (*American Academy of Pediatrics v. Lungren* (1997) 16 Cal.4th 307, 345; accord, *Tom v. City and County of San Francisco* (2004) 120 Cal.App.4th 674, 680.)


C.    *The Eviction Threshold Ordinance Is Not Preempted by the Unlawful Detainer Act*

AAGLA contends the Eviction Threshold Ordinance imposes an improper procedural limitation on the timeline for summary evictions under the Unlawful Detainer Act, specifically Code of Civil Procedure section 1161.  AAGLA further contends that even if the eviction threshold requirement is viewed as a substantive limitation, "to the extent it is based on an asserted power to eliminate evictions based on nonpayment, it exceeds the City's authority and is invalid for that reason, as well."

"[A] city, pursuant to its police power, may place substantive limitations on otherwise available grounds for eviction, but not procedural ones."  (*Rental Housing Assn. of Northern Alameda County v. City of Oakland* (2009)

11

171 Cal.App.4th 741, 762-763 (*Rental Housing*).) "When municipalities enact measures that impose procedural barriers to the state statutory scheme for summary eviction proceedings, those measures are preempted." (*Pasadena, supra,* 117 Cal.App.5th at p. 241; see *Birkenfeld, supra,* 17 Cal.3d at pp. 149, 151; *SFAA 2024, supra,* 104 Cal.App.5th at pp. 1237-1238; see generally *Chevron, supra,* 15 Cal.5th at p. 142 [if local legislation conflicts with state law, " ' "it is preempted by such law and void" ' "].) AAGLA argues that the Eviction Threshold Ordinance contradicts and is preempted by the Unlawful Detainer Act because it imposes an improper procedural limitation on the three-day notice period required under Code of Civil Procedure section 1161, subdivision (2), before a landlord may pursue an eviction for nonpayment of rent.

      1.    *The Unlawful Detainer Act*

"The Unlawful Detainer Act establishes procedures for resolving disputes between landlords and tenants regarding the right to possess real property. (*Stancil v. Superior Court* (2021) 11 Cal.5th 381, 394 [(*Stancil*)].) Unlawful detainer proceedings are summary in nature, providing for shorter timelines and a more limited scope than standard civil actions. (*Id.* at p. 390; *Barela v. Superior Court* (1981) 30 Cal.3d 244, 249.) These proceedings seek to balance tenants' occupancy rights against landlords' rights to earn income. (*Stancil*, at p. 390.) They also demand strict procedural compliance. (*Ibid.*)" (*Pasadena, supra,* 117 Cal.App.5th at pp. 241-242.)

Code of Civil Procedure section 1161 sets forth the circumstances under which a tenant "is guilty of unlawful detainer" and may be evicted. (Code Civ. Proc., § 1161,

12

subds. (2)-(4); see *Stancil, supra,* 11 Cal.5th at p. 395; *Pasadena, supra,* 117 Cal.App.5th at p. 242.)  "[T]hese include staying in possession after the term of the lease, remaining in possession after default in payment of rent and three days' notice, and remaining in possession after failing to perform other conditions or covenants of the lease."  (*Foster v. Britton* (2015) 242 Cal.App.4th 920, 931, fn. 7.)

Local governments may further regulate these substantive grounds for eviction, including by creating substantive defenses to eviction, pursuant to their police power.  (See *Birkenfeld, supra,* 17 Cal.3d at p. 149; *Fisher v. City of Berkeley* (1984) 37 Cal.3d 644, 705-707 (*Fisher*) [local ordinance's elimination of "one ground for eviction" did not "directly conflict[] with" Code of Civil Procedure section 1161]; *Rental Housing, supra,* 171 Cal.App.4th at p. 754 ["municipalities may by ordinance limit the substantive grounds for eviction by specifying that a landlord may gain possession of a rental unit only on certain limited grounds"]; *id.* at p. 764 [a municipal "ordinance may permissibly eliminate a ground for eviction specified in Code of Civil Procedure section 1161 without creating a conflict with the unlawful detainer statutes"].)  For evictions based on the nonpayment of rent, state law requires that a landlord must serve the tenant with a three-day notice to pay rent or quit the premises before proceeding with an unlawful detainer action. (Code Civ. Proc. § 1161, subd. (2); see *Pasadena, supra,* 117 Cal.App.5th at p. 241; *Eshagian v. Cepeda* (2025) 112 Cal.App.5th 433, 457.)

13

2. *The Unlawful Detainer Act Does Not Preempt the Eviction Threshold Ordinance*

Here, the Eviction Threshold Ordinance has the effect of restricting a landlord's ability to bring an unlawful detainer action until the tenant owes more than one month of fair market rent. AAGLA concedes that "the ordinance may be nominally framed as a substantive limit on evictions," but argues that "it was clearly intended to have a procedural effect" and that "the financial threshold is a proxy for an extension of the time provided by the unlawful detainer statute." AAGLA argues that "[b]ecause the purpose and effect of the ordinance is to delay evictions based on nonpayment it is properly viewed as a procedural limitation and is preempted." In supplemental briefing, AAGLA argues the Eviction Threshold Ordinance should be preempted by the Unlawful Detainer Act under the same reasoning as the municipal notice and cure measure we found to be preempted in *Pasadena* (addressed below), because the ordinance was adopted for the "improper purpose" of "extend[ing] the cure period provided by state law before a landlord may pursue an eviction for nonpayment of rent."

The City, Intervenors, and amici curiae (City and County of San Francisco and City of Santa Monica) argue the ordinance merely creates a substantive defense to eviction within the City's established police power to regulate the grounds for eviction, such that a "just cause" to evict a tenant for nonpayment of rent does not exist until a particular monetary threshold is met. In their view, even if the ordinance has the effect and purpose of giving tenants more time to pay overdue rent before an eviction can occur, this "procedural impact" is necessary to regulate the substantive grounds of the new defense. They further argue the

14

ordinance does not impede the unlawful detainer statute, which governs the procedural aspects of eviction *after* a substantive basis for eviction is met.  Their supplemental briefing argues that the Eviction Threshold Ordinance is distinguishable from the municipal measure we rejected in *Pasadena* because that measure imposed affirmative written notice and cure period requirements that landlords had to satisfy before pursuing evictions for nonpayment of rent.

We analyze whether the Eviction Threshold Ordinance is preempted using the rubric set forth in the seminal case *Birkenfeld, supra*, 17 Cal.3d 129.  As we explained in *Pasadena, supra,* 117 Cal.App.5th at pages 243 to 244:  "*Birkenfeld* concerned a landlord class action challenge to two separate provisions in an initiative amendment to the City of Berkeley's charter, one of which the Supreme Court found was preempted and the other not.  ([*Birkenfeld*], at p. 135.)  The Supreme Court held that a local eviction protection does not conflict with the unlawful detainer statutes if it serves a distinct purpose.  (*Id*. at p. 149.)  'The purpose of the unlawful detainer statutes is *procedural*.  The statutes implement the landlord's property rights by permitting him to recover possession once the consensual basis for the tenant's occupancy is at an end.'  (*Ibid*., italics added.)  By contrast, a local measure eliminating particular grounds for eviction, for instance, is a limitation upon the landlord's property rights under the police power, creating a *substantive* ground of defense in unlawful detainer proceedings.  (*Ibid*.)  Thus, the unlawful detainer statutes did not preempt the provision in the Berkeley charter amendment limiting the grounds for eviction and making substantive defenses available to the tenant.  (*Ibid*.)"

15

*Birkenfeld* explained that the other challenged provision of the charter amendment "requir[ing] a landlord to obtain a certificate of eviction before seeking to recover possession of a rent-controlled unit invalidly conflicts with sections 1159 through 1179a of the Code of Civil Procedure, which provide landlords with a summary procedure for exercising their rights of repossession against tenants. . . .  Unlike the limitations imposed by the charter amendment . . . [on] the grounds for eviction, which can affect summary repossession proceedings only by making substantive defenses available to the tenant, the requirement of a certificate of eviction raises procedural barriers between the landlord and the judicial proceeding." (*Birkenfeld*, *supra*, 17 Cal.3d at p. 151; see *Pasadena, supra,* 117 Cal.App.5th at p. 244.)

As we shall explain, the Eviction Threshold Ordinance is not preempted by the Unlawful Detainer Act because the former is a permissible substantive regulation of the grounds for eviction, rather than an impermissible procedural limitation. The Eviction Threshold Ordinance does not extend the unlawful detainer timeline, does not prohibit a landlord from proceeding under the state statutory timeline, and does not require that landlords must affirmatively act in some particular way before commencing unlawful detainer proceedings.  Rather, the ordinance at issue regulates the substantive basis for eviction by creating a substantive precondition (i.e., nonpayment of rent in an amount equal to one month's fair market value) that must be satisfied before a cause of action for unlawful detainer accrues.

The local regulation here is analytically similar to that upheld in *San Francisco Apartment Assn. v. City and County of San Francisco* (2018) 20 Cal.App.5th 510 (*SFAA 2018*), which

involved an ordinance prohibiting no-fault evictions if a child or educator resided in the rental unit, and "the effective date of the notice of termination of tenancy falls during the school year." (*Id.* at pp. 513, 518.) *SFAA 2018* determined the ordinance was not procedural despite its impact on the timing of evictions because "it does not require landlords to provide written notice or to do any other affirmative act. Instead, it simply has a procedural *impact*, limiting the timing of certain evictions. Moreover, this procedural impact . . . is necessary to 'regulate the substantive grounds' of the defense it creates." (*Id.* at p. 518.) Tenants in this protected category only had a substantive defense during the school year, after which landlords could "avail themselves of the unlawful detainer procedures, which are not altered by the Ordinance. Thus, the Ordinance is a permissible 'limitation upon the landlord's property rights under the police power,' rather than an impermissible infringement on the landlord's unlawful detainer remedy." (*Ibid.*) Even if there was an "inherent delay on a landlord's unlawful detainer remedy" under the ordinance, the court concluded "the Ordinance is substantive for purposes of *Birkenfeld*'s preemption analysis," and not preempted by the unlawful detainer statutes. (*Ibid.*)

The notice and cure provisions in *Pasadena* are distinct from the Eviction Threshold Ordinance. In *Pasadena*, we examined whether a municipal initiative measure that required landlords to provide a "Written Notice to Cease" to tenants and give them an additional "reasonable period" to cure the nonpayment of rent was preempted by the unlawful detainer statutes. (*Pasadena, supra,* 117 Cal.App.5th at pp. 245-246.) The ordinance was "worded to provide that landlords may not take action to terminate a tenancy unless the tenant has failed to

17

pay the outstanding rent after receiving a Written Notice to Cease," and provided that "a landlord's failure to serve the tenant with a Written Notice to Cease and allow for the cure period to run constitutes a complete affirmative defense in an unlawful detainer action." (*Id.* at p. 245.) We concluded this was "the epitome of a 'procedural barrier[] between the landlord and the judicial proceeding'" because requiring landlords to "serve a Written Notice to Cease and allow an additional cure period as a condition precedent for eviction for nonpayment of rent is a procedural requirement that conflicts with the timeline under Code of Civil Procedure section 1161, [subdivision] (2)." (*Pasadena,* at pp. 245-246.)

The *Pasadena* notice and cure provisions were similar to those rejected in *SFAA 2024, supra,* 104 Cal.App.5th 1218. That case examined an ordinance that created a longer notice timeline for landlords pursuing at-fault evictions and concluded the ordinance was procedural under *Birkenfeld*'s framework because it extended the statutory notice period under Code of Civil Procedure section 1161. (*SFAA 2024,* at pp. 1234-1235.) That ordinance required that, for certain at-fault evictions, a landlord " 'shall prior to serving the [statutory] notice to vacate provide the tenant a written warning and an opportunity to cure.' " (*Id.* at p. 1225.) Further, it stated these grounds for at-fault eviction " 'shall not apply unless the violation is not cured within ten days after the landlord has provided the tenant a written warning that describes the alleged violation and informs the tenant that a failure to correct such violation within ten days may result in the initiation of eviction proceedings.' " (*Id.* at p. 1226.)

The court in *SFAA 2024* acknowledged " ' "the distinction between procedure and substantive law can be ' "shadowy and

18

difficult to draw" in practice' " ' " because "law can be substantive but still have a 'procedural *impact.*' " (*SFAA 2024, supra,* 104 Cal.App.5th at p. 1230.) But the court ultimately ruled that the ordinance's "extension of the timeline for notice and opportunity to cure is entirely procedural. It also imposes a specific procedural requirement: [l]andlords must affirmatively act by providing a written warning after good cause for eviction has been demonstrated but before notice of eviction can be given under [Code of Civil Procedure] section 1161. . . . [T]his process creates a procedural barrier precluding relief." (*Id.* at pp. 1234-1235.) The court thus held that the ordinance was preempted because it "plainly prohibits a landlord from proceeding under the state statutory timeline by requiring the additional 10-day warning and cure period." (*Id.* at p. 1237.)

The Eviction Threshold Ordinance, by contrast, does not impose a similar notice and cure requirement. The ordinance instead sets a monetary threshold that must be satisfied before a cause of action for unlawful detainer accrues. That is, it is a permissible regulation of the substantive basis for eviction. (See *SFAA 2018, supra,* 20 Cal.App.5th at p. 517 [requirements that " 'regulate the substantive grounds for eviction, rather than the procedural remedy available to the landlord once grounds for eviction have been established,' " are not preempted]; accord, *Rental Housing, supra,* 171 Cal.App.4th at p. 763.) The ordinance does so without modifying the unlawful detainer statutes or imposing additional procedural requirements on landlords seeking to commence unlawful detainer proceedings.

Although the Eviction Threshold Ordinance may have the procedural effect of delaying the timing of some unlawful detainer actions, it remains a substantive limitation on evictions

19

because it sets the eviction threshold as an amount of unpaid rent, not a particular length of time. The ordinance is essentially "a substantive defense with an impact on timing." (*SFAA 2018, supra,* 20 Cal.App.5th at p. 519.) As with other just cause eviction protections, this substantive regulation of the grounds for eviction does not conflict with state law. There is no conflict between the ordinance's requirement that a tenant must be behind on more than one month's fair market rent before unlawful detainer proceedings can be commenced and the three-day notice timeline of Code of Civil Procedure section 1161.[3]

### 3. *The Eviction Threshold Ordinance Is Within the City's Police Power*

We are unpersuaded by AAGLA's argument that, even if the eviction threshold is deemed a substantive limitation, "to the extent it is based on an asserted power to eliminate evictions based on nonpayment, it exceeds the City's authority and is invalid for that reason, as well." AAGLA contends that "if the City has the authority to prohibit evictions where less than one month's rent is overdue, there is no obvious reason why it could not set a higher threshold or decide to prohibit evictions for non-

---

[3] The City argues AAGLA's facial challenge fails because AAGLA "only attacks the ordinance as applied to tenants whose rent is less than the fair market rate." But AAGLA's argument is that the Eviction Threshold Ordinance presents a conflict in every case where it restricts evictions, using the case of landlords with tenants paying less than fair market rent as an example where the ordinance would delay the eviction process by at least a month. We do not understand AAGLA as arguing this is the only affected population.

payment altogether." This case does not present those circumstances.

Further, AAGLA concedes that the Eviction Threshold Ordinance itself "does not eliminate nonpayment of rent as a basis for eviction, but rather delays the commencement of eviction until after the threshold is reached." The question of whether a city may eliminate a default in the payment of rent as a basis for eviction is not before us, and we limit our decision to the ordinance at issue here. (See *Fisher, supra,* 37 Cal.3d at p. 691, fn. 52 [declining to address future implications of ordinance, where question is "not before us at this time"].) As a substantive regulation of the basis for eviction in the City of Los Angeles, the ordinance squarely falls within the City's broad police power. (See *SFAA 2018, supra,* 20 Cal.App.5th at p. 516 [" 'municipalities may by ordinance limit the substantive grounds for eviction by specifying that a landlord may gain possession of a rental unit only on certain limited grounds' "]; *Birkenfeld, supra,* 17 Cal.3d at p. 140 [a city's constitutional police power within its own territory, although "subject to displacement by general state law," is otherwise "as broad as the police power exercisable by the Legislature itself"].)

D.    *The Relocation Assistance Ordinance Is Preempted by the Costa-Hawkins Act*

AAGLA argues the Relocation Assistance Ordinance's requirement that landlords pay relocation assistance to tenants displaced by a lawful rent increase is preempted by the Costa-Hawkins Act. AAGLA contends the ordinance (1) improperly interferes with landlords' statutory right to adjust the rent on rental units exempted from local rent control laws (see Civ. Code,

21

§ 1954.52); and (2) does not fall under the Act's "savings clause" (*id.*, subd. (c)). In accordance with our recent decision in *Pasadena,* we conclude AAGLA's contentions have merit.

      1.     *The Costa-Hawkins Act*

As we also recently summarized in *Pasadena, supra,* 117 Cal.App.5th at page 231, the Costa-Hawkins Act was enacted in 1995 " 'to relieve landlords from some of the burdens of 'strict' and 'extreme' rent control, which the proponents of [the] Costa-Hawkins [Act] contended unduly and unfairly interfered with the free market.' " (*Pasadena,* at p. 231; accord, *Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles* (2009) 173 Cal.App.4th 13, 30 (*Apartment Assn. of Los Angeles County*), italics omitted; *NCR Properties, LLC v. City of Berkeley* (2023) 89 Cal.App.5th 39, 47 (*NCR Properties*).)

As relevant here, Civil Code section 1954.52 exempts from local rent control laws certain residential property—including single-family homes and rental units that have certificates of occupancy issued after February 1, 1995—thus authorizing landlords to "adjust the rent on such property at will." (*DeZerega v. Meggs* (2000) 83 Cal.App.4th 28, 41; see Civ. Code, § 1954.52, subd. (a) ["Notwithstanding any other provision of law, an owner of residential real property may establish the initial and all subsequent rental rates for a dwelling or a unit" in certain circumstances]; *Apartment Assn. of Los Angeles County, supra,* 173 Cal.App.4th at p. 24 ["Civil Code section 1954.52,

subdivision (a)(1), effectively exempts newly constructed rental units from local rent control"].)[4]

In addition, for certain properties still covered by local rent control laws, another provision of the Costa-Hawkins Act, Civil Code section 1954.53, instituted a system of "vacancy decontrol," which generally permits landlords "to set the rent on a vacant unit at" fair market rates. (*NCR Properties*, *supra*, 89 Cal.App.5th at p. 47; see Civ. Code, § 1954.53; *Action Apartment*, *supra*, 41 Cal.4th at p. 1237; *Apartment Assn. of Los Angeles County*, *supra*, 173 Cal.App.4th at p. 24 [Civil Code section 1954.53 "established 'vacancy decontrol for residential dwelling units where the former tenant has voluntarily vacated, abandoned or been legally evicted' "].)

2.    *The Relocation Assistance Requirement Contradicts the Costa-Hawkins Act*

The Relocation Assistance Ordinance requires payment of relocation assistance to tenants in units not covered by rent control who "relinquish their tenancy following a proposed rental increase that exceeds the lesser of (1) the Consumer Price Index—All Urban Consumers, plus five percent, or (2) ten percent." AAGLA argues this ordinance "improperly restricts

---

[4]    "However, effective April 1, 2024 (until it sunsets on January 1, 2030), the [TPA] provides that for certain rental units that were issued a certificate of occupancy more than 15 years ago, landlords may not, over any 12-month period, increase rent more than 5 percent plus the percentage change in the cost of living, or 10 percent, whichever is lower. (Civ. Code, § 1947.12, subds. (a)(1), (d)(4), (n), (o).)" (*Pasadena, supra,* 117 Cal.App.5th at p. 231, fn. 16.)

23

rent" by interfering with landlords' statutory right under Civil Code section 1954.52 to adjust at will the rent on rental units that the Costa-Hawkins Act exempts from local rent control laws (hereinafter, exempt units).[5]  This presents substantially the same issue we addressed in *Pasadena*: "whether the requirement . . . that landlords pay relocation assistance to tenants who are unable to pay increased rent—that the Costa-Hawkins Act authorizes landlords to charge—contradicts the [A]ct and is thus preempted." (*Pasadena, supra,* 117 Cal.App.5th at p. 233.)[6]

Here, the superior court observed that the ordinance "does not directly regulate rents" and no provision of the Costa-Hawkins Act "expressly prohibit[s] the kind of relocation assistance required by the Relocation Assistance Ordinance." The court therefore concluded the ordinance "does not expressly contradict state law."  But, the court also acknowledged the ordinance could economically deter landlords from raising rents above the threshold to pay relocation assistance, and "the

---

[5]     AAGLA makes no argument that field preemption applies to the relocation assistance requirement.  As we explained in *Pasadena, supra,* 117 Cal.App.5th at page 232, it does not.  "The text of the Costa-Hawkins Act contains no express statement of intent to fully occupy the broad field of rent control.  Nor has the Legislature impliedly manifested such intent." (*Ibid.*)

[6]     In *Pasadena*, we considered a municipal initiative measure that applied to rental units not covered by rent control, and which required, in relevant part, that a " 'Landlord shall provide Relocation Assistance to any Tenant household who is displaced from a Rental Unit due to inability to pay Rent increases in excess of 5 percent plus the most recently announced Annual General Adjustment in any twelve-month period.' " (*Pasadena, supra,* 117 Cal.App.5th at p. 230.)

deterrent effect of the Relocation Assistance Ordinance seemingly conflicts with the Costa-Hawkins provisions permitting landlords to 'establish the initial and all subsequent rental rates for a dwelling or a unit.' Civ. Code, §§ 1954.52, subd. (a), 1954.53, subd. (a)." Further, it stated that "[d]epending on the specific factual circumstances the Relocation Assistance Ordinance may be inconsistent with notions of vacancy decontrol and the free market." Nevertheless, the superior court ultimately concluded the Relocation Assistance Ordinance was saved by the Costa-Hawkins Act's preservation of local authority to "regulate or monitor the basis for eviction" under Civil Code section 1954.52, subdivision (c), because it regulated "constructive evictions."

AAGLA argues, as did the petitioners in *Pasadena,* that the relocation assistance requirement frustrates the purpose of Civil Code section 1954.52, which is to permit landlords to raise rents on exempt units to fair market value. (See *Pasadena, supra,* 117 Cal.App.5th at pp. 234-235 [addressing argument that just as a municipal measure "could not impose a cap on rent increases for exempt units without running afoul of the Costa-Hawkins Act, neither may it impose penalties in the form of relocation assistance to discourage landlords from exercising their right under the Act to raise the rent on exempt units"].)

As we concluded in *Pasadena*, and as the superior court concluded in this case, "the relocation assistance requirement does not directly conflict with the right to raise rents, because nothing in [the Relocation Assistance Ordinance] constrains landlords from setting the rent on exempt units whenever they want and at whatever rate they choose." (*Pasadena, supra,* 117 Cal.App.5th at p. 235.) But contradiction preemption principles still apply when local legislation is "inimical to general

state law," and "if a local ordinance ' "attempted to prohibit conduct proscribed or *permitted* by state law[,] either explicitly or implicitly, it would be preempted." ' " (*Chevron, supra,* 15 Cal.5th at p. 149; *Riverside, supra,* 56 Cal.4th at p. 743.)  Under contradiction preemption, " 'state law may preempt local law when local law prohibits not only what a state statute "demands" but also what the statute permits or authorizes.' "  (*Chevron, supra,* 15 Cal.5th at p. 149, quoting *City of Riverside,* at p. 763 (conc. opn. of Liu, J.).)

As we explained in *Pasadena*, the court in "*Palmer/Sixth Street Properties, L.P. v. City of Los Angeles* (2009) 175 Cal.App.4th 1396 (*Palmer/Sixth*) dealt with a local ordinance that had indirect effects similar to those engendered by [the Relocation Assistance Ordinance].  That ordinance required developers of residential units to build a certain number of 'affordable dwelling units' to be rented at specified below-market rates.  (*Id.* at pp. 1400-1401.)  The ordinance further provided that a developer could avoid compliance with this affordable housing requirement by paying an 'in lieu' fee that the city would use to build affordable housing units elsewhere.  (*Ibid*.)  The appellate court held the Costa-Hawkins Act preempted the affordable housing requirement because it was 'hostile or inimical to Civil Code section 1954.53 by denying [the developer] the right to establish the initial rental rates for the affordable housing units that are required to be built under [the ordinance].' (*Palmer/Sixth*, at p. 1410.)  The court rejected the city's argument that the alternative in lieu fee did not conflict with the Costa-Hawkins Act.  (*Id.* at p. 1411.)  The court explained the in lieu fee was 'inextricably intertwined' with the affordable housing

26

requirement and thus encompassed by its preemption. (*Id.* at pp. 1411-1412.)" (*Pasadena, supra,* 117 Cal.App.5th at p. 235.)[7]

The relocation assistance requirement in the Relocation Assistance Ordinance operates similarly to the in lieu fee in *Palmer/Sixth* and the preempted ordinance in *Pasadena*: "[T]he relocation assistance requirement financially penalizes landlords for exercising their rights under the Costa-Hawkins Act. Even if imposing an obligation to pay relocation assistance is not a direct restriction on a landlord's ability to set the rent, the money a landlord must pay in relocation assistance reduces the amount of income the landlord receives from the rental property. The Costa-Hawkins Act was meant to rein in rent control by allowing landlords to raise the rents on exempt units to their fair market value. (*NCR Properties*, *supra*, 89 Cal.App.5th at p. 47; *Apartment Assn. of Los Angeles County*, *supra*, 173 Cal.App.4th at p. 30.) The relocation assistance requirement counteracts that purpose. . . . However worthy and laudable [the public policy

_____

[7] By contrast, *Bullard v. San Francisco Residential Rent Stabilization Bd.* (2003) 106 Cal.App.4th 488, "presents an example of a direct conflict. There, the court addressed whether the Costa-Hawkins Act preempted a rent control ordinance that required a landlord who evicted a tenant in order to move into the tenant's unit to offer the tenant another unit, if one was vacant, at a specified rate. (*Id.* at pp. 489-493.) The court held that the 'rent control ordinance, by purporting to limit the amount of rent a landlord may charge for a replacement unit following an owner move-in eviction, directly contradicts' and was thus preempted by the Costa-Hawkins Act's vacancy decontrol provision allowing landlords to establish the initial rental rate for a rental unit. (*Id.* at pp. 492-493, citing Civ. Code, § 1954.53, subd. (a).)" (*Pasadena, supra,* 117 Cal.App.5th at p. 235.)

goals of the Relocation Assistance Ordinance are], state law provides for a different purpose.  (See *Coyne, supra,* 9 Cal.App.5th at p. 1231 ['A property owner's lawful decision to withdraw from the rental market [under the Ellis Act] may not be frustrated by burdensome monetary exactions from the owners to fund the City's policy goals.'].)  Because its effect is to frustrate the purpose of the Costa-Hawkins Act, [the Relocation Assistance Ordinance] is preempted."  (*Pasadena, supra,* 117 Cal.App.5th at p. 236; see *Chevron U.S.A., Inc. v. County of Monterey, supra,* 70 Cal.App.5th at p. 172 [local regulation cannot frustrate purpose of state law]; accord, *Great Western Shows v. County of Los Angeles, supra,* 27 Cal.4th at p. 868; *AIDS Healthcare Foundation, supra,* 101 Cal.App.5th at p. 88.)

The City and Intervenors concede the Relocation Assistance Ordinance conflicts with the Costa-Hawkins Act under the reasoning of *Pasadena.*  Intervenors argue *Pasadena* was incorrectly decided because it did not apply the preemption standard articulated in *Riverside, supra,* 56 Cal.4th at page 743, that "[t]he 'contradictory and inimical form of preemption does not apply unless the ordinance directly requires what the state statute forbids or prohibits what the state enactment demands.' "

This argument does not account for the California Supreme Court's subsequent determination that *Riverside*'s demands/prohibits language " 'should not be misunderstood to improperly limit the scope of the preemption inquiry.' "  (*Chevron, supra,* 15 Cal.5th at p. 148, quoting *Riverside,* at p. 763 (conc. opn. of Liu, J.).)  The high court, adopting language from Justice Liu's concurring opinion in *Riverside*, stated that " 'state law may preempt local law when local law prohibits not only what a state statute "demands" but also what the statute permits or

28

authorizes.' " (*Chevron, supra,* 15 Cal.5th at p. 149, quoting *City of Riverside,* at p. 763 (conc. opn. of Liu, J.).)  And *Chevron* further recognized that "if a local ordinance ' "attempted to prohibit conduct proscribed or *permitted* by state law[,] either explicitly or implicitly, it would be preempted." ' " (*Chevron, supra,* 15 Cal.5th at p. 149.)  As discussed above, we conclude that, under this standard, the Relocation Assistance Ordinance is preempted because the burden it places on the exercise of statutory rights under the Costa-Hawkins Act attempts to prohibit, or at least restrict, lawful conduct permitted by state law.

Although the TPA is not at issue here, or an asserted basis for preemption, the City argues *Pasadena* "implicitly finds that the TPA and Costa-Hawkins conflict" by "holding that a law that 'financially penalizes' landlords for rent-gouging conflicts with Costa-Hawkins."  The City contends that because "the TPA draws a distinction between anti-rent-gouging [laws] and rent control" and because the Legislature contemplated the TPA's prohibition against rent-gouging could exist concurrently with the Costa-Hawkins Act, *Pasadena* should have concluded that the measure in that case also did not conflict with the Costa-Hawkins Act. The City also states that in this case, the Relocation Assistance Ordinance is triggered "when a landlord imposes a rent increase that exceeds the lesser of 5 percent plus the consumer price index or 10 percent, the same formula the TPA uses to trigger rent-gouging penalties."  (See Civ. Code, § 1947.12, subd. (a)(1) ["an owner of residential real property shall not, over the course of any 12-month period, increase the gross rental rate for a dwelling or a unit more than 5 percent plus the percentage change in the cost of living, or 10 percent, whichever is lower"].)  In the City's

view, "[b]ecause the Legislature distinguished anti-rent-gouging from limitations on rent increases, [the Relocation Assistance Ordinance]'s penalty on rent-gouging does not frustrate the purpose of the Costa-Hawkins Act."

But, in the TPA, the Legislature directly prohibited rent increases over a certain percentage only for a specified category of rental units (those built before the last 15 years). And the formula used in the TPA is not linked to relocation assistance. Although the TPA provides for relocation assistance in the event of a " 'no-fault just cause' " eviction, "[i]t does not . . . provide for relocation assistance in the event a tenant is unable to pay the monthly rent following a lawful rent increase." (*Pasadena, supra,* 117 Cal.App.5th at p. 231, fn. 16.) In other words, the formula used in the Relocation Assistance Ordinance triggers different protections than the formula used in the TPA. The TPA creates a right of civil action against landlords who exceed the formula, rather than burden the exercise of lawful rights under the Costa-Hawkins Act. (See Civ. Code, § 1947.12, subd. (k)(1) ["An owner who demands, accepts, receives, or retains any payment of rent in excess of the maximum rent allowed by this section shall be liable in a civil action to the tenant from whom those payments are demanded, accepted, received, or retained . . . ."].)

> 3. *The Relocation Assistance Requirement Does Not Fall within the Costa-Hawkins Act's Savings Clause*

The City and Intervenors contend the Costa-Hawkins Act does not preempt the Relocation Assistance Ordinance because providing relocation assistance to tenants unable to pay lawfully increased rent falls within the Act's savings clause. That reservation of authority in Civil Code section 1954.52 states,

"Nothing in this section shall be construed to affect the authority of a public entity that may otherwise exist to regulate or monitor the basis for eviction." (Civ. Code, § 1954.52, subd. (c).) "The Costa-Hawkins Act thus expressly carves out from its preemptive effect local regulation of the 'basis for eviction.' " (*Pasadena, supra,* 117 Cal.App.5th at p. 236; see Civ. Code, § 1954.52, subd. (c); *id.*, § 1954.53, subd. (e) [near-identical savings clause in Costa-Hawkins Act's vacancy decontrol provisions preserving the authority of local governments "to regulate or monitor the *grounds for eviction*," italics added]; *DeZerega v. Meggs*, *supra*, 83 Cal.App.4th at p. 40 ["The Act explicitly disclaims any effect on the power of local governments to regulate evictions"].) Contrary to respondents' contention and the ruling of the superior court, this provision does not save the relocation assistance requirement from preemption.

As we explained in *Pasadena*:

> "Generally speaking, a savings clause preserves some preexisting legal authority from the effect of some newly enacted legal authority that contains the savings clause. 'Saving clauses are usually strictly construed.' " (*City of Dana Point v. California Coastal Com.* (2013) 217 Cal.App.4th 170, 195; accord, *Coyne*, *supra*, 9 Cal.App.5th at p. 1231 ["savings clauses . . . ' "are usually strictly construed" ' "].) " '[C]ourts have refused to interpret savings clauses in a manner that would authorize activity that directly conflicts with the statutory scheme containing the savings clause.' " (*Coyne*, at p. 1231; see *Action Apartment*, *supra*, 41 Cal.4th at p. 98 [characterizing as "narrowly focused" the savings clause of the Costa-Hawkins Act's vacancy decontrol provisions].)

31

The relocation assistance requirement does not concern the regulation of a "basis for eviction." (Civ. Code, § 1954.52, subd. (c).) A "basis for eviction" is properly understood as a ground or reason for eviction, such as a breach of the tenant's duties to the landlord or the landlord's withdrawal of the unit from the rental housing market. (See *Birkenfeld*, *supra*, 17 Cal.3d at pp. 147-148; [*SFAA 2024*], *supra*, 104 Cal.App.5th at pp. 1224-1225, 1235.) The requirement for a landlord to pay relocation assistance when a tenant must vacate the unit in response to a lawful rent increase is not a basis for any eviction. And although the tenant's failure to pay the increased rent would constitute a basis for eviction (see Code Civ. Proc., § 1161, subd. (2)), as discussed, the Costa-Hawkins Act prohibits local regulation that conflicts with a landlord's right to impose the rent increase.

In *Bullard* [*v. San Francisco Residential Rent Stabilization Bd.* (2003) 106 Cal.App.4th 488,] 491, the court rejected the argument that an ordinance restricting the rent a landlord could charge for a replacement unit after the tenant was evicted for an owner move-in constituted regulation of a "ground[] for eviction" for purposes of the analogous savings clause under the Costa-Hawkins Act's vacancy decontrol provisions. (See Civ. Code, § 1954.53, subd. (e).) The court explained, "The ground for eviction was that Landlords sought to recover possession of a unit for use as their principal residence. The requirement that they offer another unit at a regulated rent was a condition imposed by the rent control ordinance on their recovery of possession, but it cannot be deemed in any ordinary sense of the term a 'ground' for the eviction." (*Bullard*, at p. 491; see

also *id.* at p. 492 ["Had the Legislature intended to preserve local authority to control rent following evictions, we do not believe it would have spoken in terms of the 'grounds for eviction,' which simply do not include the amount of rent a landlord may charge after evicting a tenant."].) Here, the relocation assistance requirement is a condition imposed on landlords in response to their increasing the rent in a manner that causes the tenant to vacate the unit. Even though the requirement applies in conjunction with a landlord recovering possession of a vacated unit, it alone does not constitute a "basis" for eviction in any ordinary sense of that term.

(*Pasadena, supra,* 117 Cal.App.5th at p. 237.)

The City argues the Relocation Assistance Ordinance falls within the savings clause because it "does not restrict rents but mitigates the harm of constructive evictions." Intervenors likewise argue the ordinance "regulates evictions, not rental rates," and it "mitigates the impacts of large rent increases that result in constructive eviction." We previously rejected these arguments in *Pasadena*: "[T]he relocation assistance requirement does not pertain to, much less regulate, constructive evictions. First, the savings clause refers to evictions, not constructive evictions, and savings clauses are typically strictly construed. [Citation.] Second, even if we assume the savings clause permits local regulation of the basis for constructive evictions, we disagree with the premise that tenants who are displaced because they cannot pay lawful, good faith rent increases are 'constructively evicted.'" (*Pasadena, supra,* 117 Cal.App.5th at p. 238.)

" 'An eviction is constructive if the landlord engages in acts that render the premises unfit for occupancy for the purpose for

which it was leased, or deprive the tenant of the beneficial enjoyment of the premises.' [Citations.]" (*Pasadena, supra,* 117 Cal.App.5th at p. 238.) "When a constructive eviction occurs, 'the tenant is relieved of the obligation to pay rent and may sue for damages.' [Citations.]" "A landlord's lawful, good faith rent increase under the Costa-Hawkins Act plainly does not entitle the tenant to stop paying rent and sue the landlord for damages. Imposing such a lawful rent increase, even on a tenant who is unable to pay the increased amount, is not a constructive eviction." (*Ibid.*)

*San Francisco Apartment Assn. v. City and County of San Francisco* (2022) 74 Cal.App.5th 288, 294 (*SFAA 2022*) and *Mak v. City of Berkeley Rent Stabilization Bd.* (2015) 240 Cal.App.4th 60, 69-70 (*Mak*), which held local measures were not preempted by the Costa-Hawkins Act's vacancy decontrol scheme because they were permissible regulations of grounds for eviction within the meaning of Civil Code section 1954.53, subdivision (e), are distinguishable. In both cases, the ordinances at issue targeted "bad faith, pretextual" conduct by landlords to circumvent local eviction regulations. (*SFAA 2022*, at p. 295; see *Mak*, at pp. 63, 69 [regulation imposed a sanction for landlord's "subterfuge" and "transparent attempt to circumvent the provisions of local rent control provisions"].)

The ordinance at issue in *SFAA 2022* made it unlawful for a landlord to seek to recover possession of a rental unit that was exempt from rent control "by means of a rental increase that is imposed in bad faith to coerce the tenant to vacate the unit in circumvention of the city's eviction laws." (*SFAA 2022, supra*, 74 Cal.App.5th at pp. 290-291.) The appellate court concluded the regulation's targeting of bad faith, pretextual rent increases

to avoid local eviction regulations was within the reservation of local authority to regulate the grounds for eviction under Civil Code section 1954.53, subdivision (e).  (*SFAA 2022*, at p. 294.)  And in "*Mak*, the court upheld a local measure limiting the initial rent of a new tenant where the previous tenant vacated the unit after the landlord took action to terminate the tenancy with a bad faith assertion of the landlord's intent to occupy the premises.  (*Mak*, *supra*, 240 Cal.App.4th at pp. 69-70.)  The court determined that the regulation acted as a sanction for landlords' misuse of landlord-move-in notices to displace tenants so rent could be raised under the Costa-Hawkins Act's vacancy decontrol provisions and, so viewed, was ' "a permissible regulation of 'the grounds for eviction' " ' within the meaning of Civil Code section 1954.53, subdivision (e).  (*Mak*, at p. 69.)"  (*Pasadena, supra,* 117 Cal.App.5th at p. 239.)

Under the Relocation Assistance Ordinance, as with the relocation assistance measure in *Pasadena,* "a landlord's requirement to provide relocation assistance is not limited to instances where the landlord raises the rent in bad faith in order to force tenants to move out, but rather applies to all lawful increases of the rent to fair market value." (*Pasadena, supra,* 117 Cal.App.5th at p. 240.)  The Relocation Assistance Ordinance "imposes a categorical infringement on a landlord's right under the Costa-Hawkins Act to set rent on an exempt unit at" fair market rates.  (*Pasadena,* at p. 234.)  "The relocation assistance requirement is thus distinguishable from the ordinance in [*SFAA 2022*] that was solely concerned with bad-faith, coercive conduct by landlords.  And unlike the measure at issue in *Mak*, the relocation assistance requirement is not geared toward preventing pretextual evictions intended to circumvent rent

35

control.  The relocation assistance requirement applies only to exempt units, not to units covered by rent control, and thus landlords do not need existing tenants to move out to be able to raise the rent to market rates."  (*Pasadena,* at p. 240.)

Accordingly, because the relocation assistance requirement under the Relocation Assistance Ordinance "does not constitute regulation of a basis for eviction within the meaning of Civil Code section 1954.52, subdivision (c), that provision does not save the requirement from preemption by the Costa-Hawkins Act." (*Pasadena, supra,* 117 Cal.App.5th at p. 241.)

## DISPOSITION

The judgment is affirmed in part, reversed in part, and remanded.  On remand, the superior court is directed to enter a new judgment that: (1) grants AAGLA relief on its claim that state law preempts the relocation assistance requirement of Ordinance No. 187764; and (2) denies all other previously denied relief on petitioner's claims, including on the claim that state law preempts the eviction threshold requirement of Ordinance No. 187763.  The parties shall bear their own costs on appeal.

                                                  MARTINEZ, P. J.

We concur:


        FEUER, J.                              STONE, J.

36

Filed 5/14/26

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| APARTMENT ASSOCIATION OF LOS ANGELES COUNTY, INC., | B336071 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 23STCP00720) |
| v. | |
| CITY OF LOS ANGELES et al., | ORDER MODIFYING OPINION AND CERTIFYING OPINION FOR PARTIAL PUBLICATION |
| Defendants and Respondents; | |
| COMMUNITY POWER COLLECTIVE et al., | |
| Interveners and Respondents. | (NO CHANGE IN THE APPELLATE JUDGMENT) |

THE COURT:

---

[*]     Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part D of the Discussion.

It is ordered that the opinion filed herein on April 15, 2026, be modified as follows:

1. On page 3, add the words "In the published part of the opinion, we address AAGLA's argument that," at the beginning of the first full paragraph, and remove the words, "AAGLA contends," so the sentence reads:

>In the published part of the opinion, we address AAGLA's argument that the Eviction Threshold Ordinance's monetary threshold requirement for evictions based on nonpayment of rent is an improper procedural limitation on the timeline for summary evictions under the Unlawful Detainer Act (Code Civ. Proc., § 1159 et seq.), and exceeds the City's authority even if viewed as a substantive limitation.

2. On page 3, add the words "In the nonpublished part of the opinion, we address AAGLA's argument that," at the beginning of the second full paragraph, and remove the words, "also argues," so the sentence reads:

>In the nonpublished part of the opinion, we address AAGLA's argument that the Relocation Assistance Ordinance's requirement that landlords pay relocation assistance to tenants displaced by lawful rent increases is preempted by the Costa-Hawkins Rental Housing Act (Costa-Hawkins Act) (Civ. Code, § 1954.40 et seq.).

2

3.     The paragraph commencing at the bottom of page 3 with "In the nonpublished" and ending at the top of page 4 with "remand with directions" is modified to separate the final sentence so that the final sentence forms its own standalone paragraph to read:

>   Accordingly, we affirm in part, reverse in part, and remand with directions.

4.     On page 19, second sentence of the first full paragraph, the words "(i.e., one-month's fair market rent)" are to be inserted between the words "threshold" and "that" so that the sentence reads:

>   The ordinance instead sets a monetary threshold (i.e., one-month's fair market rent) that must be satisfied before a cause of action for unlawful detainer accrues.

5.     The final sentence of the paragraph commencing at the bottom of page 20 with "We are unpersuaded" and ending at the top of page 21 with "present those circumstances" is modified to end with the words "and we address only the Eviction Threshold Ordinance at issue in this case," so the sentence reads:

>   This case does not present those circumstances, and we address only the Eviction Threshold Ordinance at issue in this case.

6.      On page 21, second sentence of the first full paragraph, the word "Again," is added to the beginning, so that the sentence reads:

> Again, the question of whether a city may eliminate a default in the payment of rent as a basis for eviction is not before us, and we limit our decision to the ordinance at issue here.

There is no change in the appellate judgment.

The opinion in the above-entitled matter filed on April 15, 2026, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be partially published in the Official Reports and it is so ordered.

_____

MARTINEZ, P. J.              FEUER, J.                STONE, J.

4